(Nos. 47508, 47519 cons

THE PEOPLE *ex rel.* AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES *et al.*, Appellees, v. DAN WALKER, Governor, *et al.*, Appellants.—ILLINOIS STATE EMPLOYEES AS-SOCIATION *et al.*, Appellees, v. DANIEL WALKER, Governor, *et al.*, Appellants.

*Opinion filed June 30, 1975.—Rehearing denied August 13, 1975.*

William J. Scott, Attorney General, of Springfield (Thomas H. Price, Jr., Assistant Attorney General, of counsel), for appellants.

Gilbert A. Cornfield of Kleiman, Cornfield & Feldman, of Chicago, for appellees American Federation of State, County and Municipal Employees *et al.*

Sorling, Catron and Hardin, of Springfield (William S. Hanley, of counsel), for appellees Illinois State Employees Association *et al.*

PER CURIAM: In separate actions filed in the circuit court of Sangamon County, plaintiffs, individually, on behalf of those similarly situated, and as representatives of two public employee associations, sought by *mandamus* and mandatory injunction to compel the Governor and other State officials, defendants herein, to proceed in such manner so as to grant certain State employees a full salary increase of $100 per month covering the period from September 1, 1974, to December 31, 1974. After defendants had filed motions to dismiss the actions, the circuit court ordered that the writs of *mandamus* issue in conformity with the relief sought by plaintiffs. We granted direct appeal (50 Ill.2d R. 302(b)) and have consolidated these causes. The issue presented for consideration concerns the effective date of the legislation providing for the salary increase.

Determination of the issue requires examination of the pertinent legislative enactments of the 78th General Assembly. On May 29, 1974, House Bill 2851 was introduced. Section 1 of that bill read as follows:

> "Section 1. The following sums, or so much thereof as may be necessary, are appropriated to the Comptroller from the respective funds designated for the purpose of providing a $100 a month salary increase, effective September 1, 1974, to those State employees included in Section 2 of this Act:
>
> General Revenue Fund .............. $45,814,000"

The remainder of section 1 consisted of 21 line appropriations which are not pertinent to these appeals. House Bill 2851 further provided:

> "Section 2. The salary increase is provided for all employees, except prevailing wage, negotiated rate, employees under special payroll plans included in the respective appropriation Acts, employees of the Secretary

of State, Attorney General, Comptroller, Treasurer, Lieutenant Governor, Superintendent of Public Instruction and the State Universities and any employee whose salary is fixed by statute.

Section 3. The Bureau of the Budget shall compute the additional amounts required to implement the increase and transmit this information to the Comptroller, who shall transfer the respective amounts computed as necessary for the purposes of this Act to the necessary line items of the offices, departments and agencies whose employees are covered by Section 2 of this Act.

Section 4. This Act takes effect July 1, 1974."

It is undisputed that plaintiffs are within that category of employees who were to receive the salary increase.

Thereafter section 1 was amended in the Senate to read, "A salary increase of $100 per month, effective September 1, 1974, shall be provided those state employees included in Section 2 of this Act." The various line appropriations, heretofore mentioned, were deleted from section 1, and a minor change was effected in section 3. The bill, as amended, was passed by the Senate with more than three-fifths approval. As defendants admit, the only real effect of the amendments was to remove the appropriation language from the bill. The House of Representatives concurred in the Senate amendments on July 1, 1974, by a vote of more than three fifths of its members. The bill was then transmitted to the Governor for his action.

On July 10, 1974, the Senate amended House Bill 2303 entitled "An Act making appropriations for the ordinary and contingent expenses of certain agencies" by adding section 3.1, which contained the precise appropriation language previously deleted from House Bill 2851. The Senate thereafter passed House Bill 2303 by more than three-fifths approval. The House of Representatives concurred in the Senate amendment addition of section 3.1, and the bill was presented to the Governor.

The parties to these appeals concur in regard to House Bill 2851, as amended, that the Governor exercised his amendatory veto power conferred by section 9(e) of

article IV of the 1970 Constitution on September 5, 1974, and his objection was duly filed with the office of the Secretary of State as authorized by section 9(b) of article IV. The Governor recommended that the $100 per month salary increase specified in section 1 of House Bill 2851, as amended, be changed to $50 per month. Pursuant to his item reduction authority (Ill. Const. (1970), art. IV, sec. 9(d)), the Governor reduced the General Revenue Fund appropriation contained in section 3.1 of House Bill 2303, as amended, from $45,814,000 to $21,314,000 in accordance with the Governor's "decision to provide state employees a $50 per month salary increase. *** [T]he approved amount should be available to pay the $50 increase."

House Bill 2851, as amended, was subsequently returned to the General Assembly where the House of Representatives and then the Senate (on December 4, 1974) overwhelmingly rejected the amendatory action of the Governor. House Bill 2851 became law. (Pub. Act 78—1254.) No action was taken by the General Assembly to restore the reduced amount of appropriations in House Bill 2303 (Ill. Const. (1970), art. IV, sec. 9(d)) and the bill, as reduced, became law. Pub. Act 78—1090.

It would appear that the employees affected by Public Act 78—1254 were paid the $50 per month salary increase designated by the Governor during the period of September 1 to December 31, 1974. Commencing January 1, 1975, plaintiffs and other employees received a salary increase of $100 per month. Plaintiffs seek reimbursement of the additional $50 per month salary which they claim they were entitled to receive between September 1 and December 31, 1974.

Defendants maintain that Public Act 78—1254 did not become law until December 4, 1974, and was not effective until that date when the final legislative action was taken to override the Governor's amendatory veto thereby enacting House Bill 2851 into law. (*Cf. People ex rel.*

*Klinger v. Howlett,* 50 Ill.2d 242, 248.) They rely upon a statutory provision applicable to the effective dates of certain legislation which we find is authorized by section 10 of article IV of the 1970 Constitution entitled "Effective Dates of Laws." The applicable statute provides:

> "A bill passed after June 30 of a calendar year shall become effective on July 1 of the next calendar year unless the General Assembly by a vote of three-fifths of the members elected to each house provides for an earlier effective date in the terms of the bill or unless the General Assembly provides for a later effective date in the terms of the bill; *provided that if the effective date provided in the terms of the bill is prior to the date the bill becomes a law then the date the bill becomes a law shall be the effective date.*" (Emphasis added.) Ill. Rev. Stat. 1973, ch. 131, par. 22.

Moreover, defendants advance subsidiary arguments that the General Assembly failed to evidence legislative intent that House Bill 2851 be retroactively applied to September 1, 1974, as demonstrated by the General Assembly's inaction to restore the necessary appropriation in House Bill 2303; and that retroactive payment of the funds sought by plaintiffs would be constitutionally (Ill. Const. (1970), art. VIII, sec. 1(a)) and statutorily prohibited in "An Act in relation to State Finance" (Ill. Rev. Stat. 1973, ch. 127, par. 145).

Plaintiffs in cause No. 47519 say they do not dispute that House Bill 2851, as amended, became law and took effect on December 4, 1974. The principal thrust of their argument is that House Bill 2851, as amended, manifests a clear legislative intent that its benefits accrue from September 1, 1974, and that this intent should not be frustrated by the Governor's amendatory veto authority. Basically, plaintiffs in cause No. 47508 attack the defendants' reliance upon the finance statute. And these plaintiffs would appear to agree that House Bill 2851, as amended, should be applied as of September 1, 1974, when they say

"the effective date is unambiguously established in the legislation and of course the legislative intent clearly supports the Petitioners-Appellees [plaintiffs] viewpoint that the General Assembly intended a $100.00 salary increase begin September 1, 1974, subsequent to the date the legislation was initially passed."

Section 9 of article IV of the 1970 Constitution establishes the veto procedure. A bill passed by the legislature must be presented to the Governor within 30 days and, if he signs the bill, it shall become law. (Sec. 9(a).) The Governor has 60 days after the bill has been presented to him to veto the bill or it will become law. (Sec. 9(b).) The legislature within the time periods specified in section 9(c) may override the veto by a constitutionally mandated three-fifths majority. Section 9(d) exclusively concerns the reduction or veto of appropriation measures.

Section 9(e) pertains to the Governor's amendatory veto authority. If such authority is exercised, this section provides that the bill will be returned to the legislature and treated as other vetoed bills. However, if a legislative majority concurs in the Governor's recommendations and if he certifies this concurrence then the bill shall become law.

An examination of the aforegoing constitutional framework indicates that House Bill 2851, as amended, was to be presented to the Governor within 30 days of its passage by the General Assembly on July 1, 1974. The Governor would then have 60 days to act on the matter. We take judicial notice of the fact that House Bill 2851, as amended, was presented to the Governor on or about July 11, 1974. Therefore the Governor would not have had to act on House Bill 2851, as amended, prior to September 1, 1974.

Section 10 of article IV of the 1970 Constitution pertains to the effective date of laws. A bill passed after June 30 will not become effective until July 1 of the

following year unless, as here, an earlier effective date is approved by three fifths of the General Assembly. To alleviate confusion when the Governor's action on a bill occurs subsequent to the specified effective date contained therein, statutes were enacted which "provided that if the effective date provided in the terms of the bill is prior to the date the bill becomes a law then the date the bill becomes a law shall be the effective date." Laws of 1973, 78th General Assembly, Pub. Act 78–85, secs. 1(b), 2, at 197; Ill. Rev. Stat. 1973, ch. 131, pars. 21(b), 22.

It is a well-settled rule that statutes will be given prospective application although they may be retroactively applied where a clear expression of this intent is evidenced. (*Vendo Co. v. Stoner,* 58 Ill.2d 289, 310; *People ex rel. Baylor v. Bell Mutual Casualty Co.,* 54 Ill.2d 433, 440.) House Bill 2851, as amended, was passed after June 30, 1974, and would have become effective on July 1, 1975, unless the General Assembly, by appropriate action, specified otherwise. (Ill. Const. (1970), art. IV, sec. 10.) Section 4 specified that "This Act takes effect July 1, 1974." The date of the final legislative action necessary to override the Governor's amendatory veto was December 4, 1974. Therefore, pursuant to the statutory provision previously set forth (Ill. Rev. Stat. 1973, ch. 131, par. 22) the effective date thereof was December 4, 1974. Had the legislature intended to afford retroactive effect to House Bill 2851, as amended, in the event that it was not enacted into law before September 1, 1974, a more explicit expression of this intent would be necessary.

To summarize, House Bill 2851, as amended, became law and took effect on December 4, 1974, and it was to be prospectively applied. It is uncontroverted that the employees designated to receive the $100 per month salary increase did not receive the full increase from December 4 to December 31, 1974. We are of the opinion that those employees who qualify should be paid a proportional share of the full salary increase during this period.

Accordingly, the judgments of the circuit court of Sangamon County are vacated and the causes remanded to that court with directions to issue a writ of *mandamus* to compel payment of the portion of the $100 per month salary increase denied qualified employees during the period of December 4 to December 31, 1974.

*Judgments vacated, causes remanded with directions.*