(Nos. 52787, 52788 cons.—

IRIS M. MAITER *et al.,* Appellees, v. CHICAGO BOARD OF EDUCATION *et al.,* Appellants.

*Opinion filed October 17, 1980.—Rehearing denied November 26, 1980.*

374

Michael J. Murray, of Chicago (Christine Cheatom, of counsel), for appellants.

Ronald S. Cope of Ancel, Glink, Diamond & Murphy, P.C., of Chicago, for appellees.

James O. Latturner, Joan O'Shaughnessy, Marilyn F. Johnson, and John Elston, of Chicago, for intervenors-appellants.

MR. JUSTICE RYAN delivered the opinion of the court:

The plaintiffs, principals in the Chicago public school system and individuals on the 1970 and 1974 eligibility lists for principal, as determined by the board of examiners (Ill. Rev. Stat. 1977, ch. 122, par. 34–83), filed a com-

plaint against the defendant Chicago board of education (the board of education) on June 12, 1975. The trial court permitted certain interest groups and individuals to intervene as defendants. The nature of the interests of the intervenors is discussed later. The selection of the principals for the Chicago public school system is governed by section 34—84 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—84), which provides that principals are to be selected "for merit only." The plaintiffs contend this requires appointment by "rank order" as determined by the score assigned the prospective principal candidates by the board of examiners. Starting in 1970, the board of education adopted procedures establishing "nominating committees of local school councils" in order to involve local communities in the selection of school principals. The committees were established without any statutory authority, and "rank order" was no longer the sole criteria used to select principals. On December 20, 1976, pursuant to the plaintiffs' motion for summary judgment, the trial court entered a judgment order requiring that all principals be selected by "rank order" until such time as the board of education adopted "a uniform system of community input." The trial court order also provided that rank order need not be the sole criteria of merit. On September 28, 1976, the trial court entered an additional order permitting members of community organizations and school parents councils to intervene. The appellate court reversed the circuit court's order providing that rank order need not be used by the board of education as the sole criteria of merit, and it remanded with directions that the board of education make appointments to the position of principal in rank order from eligibility lists prepared by the board of examiners. (77 Ill. App. 3d 389.) We granted leave to appeal.

Prior to 1917, the Chicago board of education had plenary power to determine the character and fitness of

applicants for appointment as principals of the various schools. As the trial court stated, the so-called Otis Law was passed in 1917 in order to do away with favoritism, partisanship, and cronyism in the selection of principals. The Otis Law provided in part that "[a]ppointments and promotions of teachers, principals and other educational employees shall be made for merit only ***." (Ill. Rev. Stat. 1975, ch. 122, par. 34–84.) Also, a board of examiners was created to examine all applicants and to prepare and establish all necessary eligibility lists. (Ill. Rev. Stat. 1975, ch. 122, par. 34–83.) From 1917 until 1970, the board of education made appointments of principals and teachers in "rank order" from an eligibility list compiled pursuant to examinations given by the board of examiners.

On March 25, 1970, the board of education adopted procedures calling for the involvement of local communities in the selection of principals and established nominating committees of local school councils. Pursuant to these procedures, the committees were first only given the names of present principals who desired to transfer to the schools where there were vacancies. If all potential transferring principals were rejected by a committee, it was given a second list of candidates from the eligibility list in rank order. The committees rated the candidates in order of preference, and the board of education attempted to honor the requests. On October 14, 1970, the board of education adopted procedures whereby the rank on the eligibility list would not be considered either in presenting candidates to the nominating committees or in the assignment of principals.

This suit was filed on June 12, 1975. The plaintiffs argued that fitness to be a principal is to be determined by the board of examiners and that the board of education has purely a ministerial duty in selecting principals in rank order from the eligibility list compiled by the board of examiners. The plaintiffs sought a declaratory

judgment that the rules and procedures establishing the local nominating committees were in violation of the School Code, the fourteenth amendment of the United States Constitution, and section 2 of article I of the Illinois Constitution. Pursuant to plaintiffs' motion for summary judgment, the trial court entered its judgment order on December 20, 1976. The order reviewed the history of the applicable statutes and found that rank-order appointment of principals was abhorrent because it precluded community input. However, the trial court ordered that principals were to be selected by rank order until such time as the board of education was able to establish a uniform system of community input. The court stated:

"2. That rank order on the principals' eligibility examination need not be used by the Board as the sole criteria of merit in the appointment of principals to individual schools, provided however, that until a uniform system of community input is established appointments to principals shall be in rank order commencing with appointments in rank order from the oldest existing principal list (1970)."

The intervenors appealed from that portion of the order requiring the board of education to appoint principals in rank order until such time as a uniform system of community input was established. On April 13, 1977, the board of education, in an attempt to comply with the trial court's order, adopted Board Report 77—156—46, which established uniform procedures for community participation in the principal-selection process. The intervenors' appeal was dismissed by the appellate court because of mootness.

The plaintiffs appealed from the portion of the trial court's order providing that "rank order" need not be the sole criteria of merit in the appointment of principals, and from the order of September 28, 1976, permitting the members of community organizations and school parents councils to intervene. Before this case was heard by the appellate court, the Illinois legislature added section

34—8.2 to the School Code for cities of over 500,000 inhabitants. (Ill. Rev. Stat. 1979, ch. 122, par. 34—8.2.) This provision specifically provides for the use of local nominating committees in the selection of principals and is set out and considered later in this opinion. Section 34—84 of the Code, requiring appointment "for merit only," remained unchanged. The appellate court held that section 34—8.2 of the School Code did not repeal or amend the requirement of rank-order appointment as contained in section 34—84, and that it was possible for local nominating committees to coexist with a system of rank-order selection.

The first issue presented for review is whether the trial court erred in permitting members of community organizations, school parents councils and individual school parents to intervene in this suit. The intervention statute (Ill. Rev. Stat. 1975, ch. 110, par. 26.1) provided that anyone shall be permitted as of right to intervene whenever the representation of his interests by existing parties may be inadequate and he may be bound by any judgment, decree or order entered in the action. It also permits intervention in the discretion of the trial court. Here, the trial court permitted the groups and parents to intervene pursuant to section 26.1(2)(b) of the Civil Practice Act, which provides:

"Upon timely application anyone may in the discretion of the court be permitted to intervene in an action *** (b) when an applicant's claim or defense and the main action have a question of law or fact in common." (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(2)(b).)

Section 26.1 has been liberally construed (*Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 623; *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 567) and is modeled after Rule 24(b) of the Federal Rules of Civil Procedure, so that the interpretation of Rule 24 is highly relevant. See *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269,

277; *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 567; Ill. Ann. Stat., ch. 110, par. 26.1, Historical and Practice Notes, at 318 (Smith-Hurd 1968).

Permissive intervention, by definition, lies in the sound discretion of the trial court, and its judgment will not be reversed unless a clear abuse of discretion is shown. Under the intervention statute, a direct interest in the suit need not be shown (*Mensik v. Smith* (1960), 18 Ill. 2d 572, 590), but the applicant must have an enforceable or recognizable right and more than a general interest in the subject matter. *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 277.

The facts show that the trial court acted within its discretion in permitting intervention because the intervenors have a recognizable right to participate in the selection of principals in Chicago through the use of local nominating committees. At the time the trial court allowed intervention, the authorization for nominating committees was found only in action of the board of education. Such authorization is now found, however, in the School Code. Section 34—8.2 of the School Code permits the Chicago board of education to use local nominating committees to screen applicants for the job of principal in local schools. Several of the individual intervenors have been members of principal-nominating committees, and several members of organizational intervenors have participated in selecting principal-nominating committees. It has been held that an organization has standing to assert the concerns of its constituents. (*NAACP v. Alabama* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163.) Also, the individual intervenors and the members of the organizational intervenors are parents of children in the Chicago public schools. As parents, they have a special interest in the litigation. Section 34—8.2 requires at least 60% of the members of local nominating committees to be "parents or guardians of children in the affected school." (Ill. Rev.

Stat. 1979, ch. 122, par. 34–8.2(C).) Thus, the inter-venors have a vital interest in the outcome of this litigation and in the method of selecting principals for their schools. Their right to particpate as members of the nominating committees or to have local nominating committees participate in the process of selecting principals will be affected by this litigation. The intervenors have more than a "mere interest" in the general subject matter of the liti-gation. Their interests will be adversely affected if plain-tiffs prevail. The trial court did not abuse its discretion in allowing the petition to intervene.

The issue raised by the merits of this appeal concerns the construction to be given the provision contained in section 34–84 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34–84) requiring that appointments be made "for merit only." The Chicago board of education and the intervenors challenge the appellate court's decision that merit appointment of principals requires that the board of education appoint principals according to their position of rank order on the eligibility list prepared by the board of examiners. They contend that the legislature granted the board of education the exclusive power to make appointments and promotions within its discretion. (See Ill. Rev. Stat. 1977, ch. 122, par. 34–8.) Requiring the board of education to make rank-order appointments pursuant to the board of examiner's eligibility list would, according to the board of education and the intervenors, constitute usurpation of the board of education's power to appoint.

In support of this argument, they maintain that the legislative scheme of the School Code evinces the legis-lative intent that the board of education have the author-ity to exercise broad discretion in its exclusive power to appoint principals. Specifically, they argue that the failure of the General Assembly to enact House Bill 1067 in the 79th General Assembly, the rejection of House Bill 516 in

the 80th General Assembly, and the enactment of section 34—8.2 reflect the legislature's affirmation of this permissibly broad power. The plaintiff-principals counter with the contention that section 34—8.2 neither repealed nor modified the rank-order requirement of section 34—84 and that the failure of the legislature to act favorably on a proposed bill can be of no consequence in legislative interpretation.

House Bill 1067 was introduced in the 79th General Assembly to amend section 34—84 of the School Code to define the term "for merit only" as requiring that principals or teachers be appointed in order of their standing on the eligibility list. The bill was tabled on June 25, 1975, in the House Elementary and Secondary Education Committee. The bill was reintroduced in the 80th session of the Illinois General Assembly as House Bill 516 and, on April 29, 1977, was again tabled in the Elementary and Secondary Education Committee. Prior to the rejection of House Bill 516, House Bill 1742 was approved as Public Act 80—879, effective October 1, 1977. (Ill. Rev. Stat. 1977, ch. 122, par. 34—8.2.) Under section 34—8.2, the board of education is legislatively authorized to impanel local nominating committees and have such committees consider, interview and nominate persons on the eligibility lists and principals who consent to be considered for a transfer. Section 34—8.2 provides:

> "A. Before the general superintendent shall recommend or the board shall vote on the appointment of a principal, the general superintendent and board may obtain the nomination of a person or persons to fill the position of principal by a local nominating committee.
>
> B. A local nominating committee, when authorized by board rules and regulations, may consider, interview and nominate only those persons for the position of principal who appear on the appropriate eligibility list prepared by the board of examiners or those principals who consent to be considered for a transfer. The recommendations of the local nominating committee shall not discriminate against

any person based upon race, color, creed, national ancestry, sex, ethnic heritage or religious beliefs.

    C. The board may adopt rules and regulations regarding the formation of and procedures to be followed by local nominating committees; these rules and regulations shall assure that at least 60% of the members of each committee shall be parents or guardians of children in the affected school." (Ill. Rev. Stat. 1977, ch. 122, par. 34—8.2.)

The relevant legislative activity is thus summarized as follows: (1) House Bill 1067 requiring rank-order appointment of principals was not adopted in the 79th General Assembly in 1975; (2) section 34—8.2 was enacted in 1977 and; (3) House Bill 516 requiring rank-order appointment was rejected in 1977. For the reasons enumerated herein, we agree that this legislative activity and the discussion of these bills in committee reflects the intent of the General Assembly that the board of education have the authority to exercise broad discretion in the appointment of principals and not be limited to rank-order appointment.

We note initially that the failure of a committee to act favorably on a proposed bill should not be relied upon, in the absence of an indication as to the reason for the failure, to ascertain legislative intent. (*Order of Railway Conductors of America v. Swan* (1947), 329 U.S. 520, 529, 91 L. Ed. 471, 478, 67 S. Ct. 405, 410.) Thus, the failure of the House Elementary and Secondary Education Committee to act favorably on House Bills 1067 and 516, in and of itself, can be of no aid in construing section 34—8.2. However, legislative committee hearings conducted on proposed bills are matters of public record. These hearings include statements by the proponents of the rejected bills as to their purpose as well as by opponents as to the reason for their opposition. The hearings also include statements by the proponents of House Bill 1742 (now section 34—8.2 of the School Code). In a previous opinion, we have recognized that public statements made by those who are in a position to clarify

legislative meaning carry weight and are helpful to this court. (*Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 226; see 2A Sutherland, Statutes & Statutory Construction sec. 48.10, at 209-10 (4th ed. 1973).) We find that the statements made during the legislative committee hearing on these bills are helpful in our determination of legislative intent insofar as they reflect the conflict between the rejected bills and House Bill 1742 (section 34–8.2).

The timing of the introduction of these bills as they relate to this litigation is also worthy of consideration. The complaint in this case was filed on June 12, 1975. House Bill 1067, which would have defined "for merit only" as used in section 34–84 of the School Code as requiring that appointments be made in order of standing on the eligibility list, was introduced in the House of Representatives on March 26, 1975. The bill was tabled on June 25, 1975. The trial court entered its order holding that rank order on the eligibility list need not be the sole criteria in the appointment of principals on December 20, 1976. Thereafter House Bill 1742 (now section 34–8.2) was introduced, as was House Bill 516 (again defining "for merit only" as requiring appointments of principals to be made in order of rank on the eligibility list). House Bill 1742 was reported favorably out of committee. A few days later the same committee considered House Bill 516. It is plain from the comments made during the committee hearings that these bills were inspired by and were in response to this litigation and the December 20, 1976, order of the circuit court of Cook County in this case.

Ronald Cope, who represents plaintiffs in this case, testified before the Elementary and Secondary Education Committee in favor of House Bill 516. In opposition to the adoption of the bill, Representative Madison stated:

"I would like to call to the committee's attention the fact that just last week we voted on House Bill 1742. And we

voted that bill out of here on a vote of 17 to 3 and that bill in essence gave the Chicago School Board the authority to allow local nominating committees to get involved in principal selection. *** This particular bill if passed by the committee would completely contravene the *** effects upon 1742 because it defines for merit only as an order of standing and at the present time for merit takes into consideration several factors including the community's standing on the principal selection."

Dr. Arthur Lehne, assistant superintendent of the Chicago board of education, also testified in opposition to House Bill 516. He agreed with Representative Madison that House Bill 516 "would negate 1742." Representative Levin, who had been a sponsor of House Bill 1742, advocated the advisory role of the community in the selection of principals as provided in the newly adopted House Bill 1742:

"[T]he ultimate decision under our bill is still with the Board of Education. We are just talking about an advisory role, so that the community could have some role (unintelligible) in those schools where parents and community are most involved you get the best quality education. So it would be very hard in those schools where there is hostility between the principal and the community to really have a good operation going on."

The above statements concerning House Bill 516 indicate that the provision of that bill defining "for merit only" as rank-order appointment was viewed as being in direct opposition to the newly enacted bill authorizing the board's creation of local nominating committees. An examination of the legislative floor debates preceding the enactment of House Bill 1742 supports this conclusion. According to Representative Levin, the underlying purpose of the bill was to clarify the power of the board of education to create community advisory committees. He stated:

"[T]his Bill was introduced because there was litigation pending *** in which the Circuit Court of Cook County *** confused the issue as to whether or not the board had

the authority to have these advisory council[s]. This is meant to clarify the legal authority." (House Debates on House Bill 1742, June 26, 1977, at 72.)

This discussion refers to the order entered by the circuit court in this case. Thus, according to Representative Levin, House Bill 1742 would affirm the power of the board of education to appoint local nominating committees to assist the board in the determination of meritorious candidates for principalships. Representative Gaines spoke of the value of community input in the selection of principals:

"[The amendment] is very much needed to take away from the Board of Education their excuse for not listening to community participation. This is the only district where the board members are not elected. And the only opportunity that the community has to have their expressions of interest heard is through these groups. *** Only when you have this kind of community participation, can you have good quality education." House Debates on House Bill 1742, June 26, 1977, at 76.

We conclude that the legislative history of House Bill 1742 of the 80th General Assembly (section 34–8.2), House Bill 1067 of the 79th General Assembly, and House Bill 516 of the 80th General Assembly, as well as the clear language of House Bill 1742, clearly indicate that the legislature intended that the board of education not be bound by the candidates' standing on the board of examiners' eligibility list in appointing persons to serve as principals.

The legislature would not have granted the board of education the authority to create local nominating committees if those groups were to have no input in the appointment process. If the board were to be confined to the eligibility list, any recommendation by the local committee would be without weight. Thus the statute authorizing the creation of the community committees would be meaningless. This court will not assume that

the legislature engaged in a meaningless act. (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 117; *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 524.) Thus, the presumption is that "the lawmaker has a definite purpose in every enactment and has adapted and formulated the subsidiary provisions in harmony with that purpose ***." (2A Sutherland, Statutes and Statutory Construction sec. 46.05, at 57 (4th ed. 1973).) The existence of community input is clearly inconsistent with an interpretation of a rank-order-of-appointment requirement. The sections of the School Code are *in pari materia,* and they must be construed with reference to one another in order to give harmonious meaning to the act as a whole. (See, *e.g., Galvin v. Galvin* (1978), 72 Ill. 2d 113, 118.) We therefore do not construe the requirement of section 34—84 that principals be appointed "for merit only" to mean that the board of education make such appointments pursuant to the order of rank appearing on the eligibility list prepared by the board of examiners. Instead, in conjunction with section 34—8.2, we construe the merit requirement as permitting the board of education discretion in its duty to appoint, which discretion may include the creation of community groups to participate in the appointment procedure. Under section 34—8.2, the local nominating committees may nominate for the consideration of the board of education any person whose name appears on the board of examiners' eligibility list.

The appellate court used the rule of contemporaneous construction in its analysis of the term "for merit only." We do not find that rule of construction to be applicable here. We have determined herein that the definition of that term pursuant to section 34—8.2 does not include a requirement that the board of education appoint principals by rank order. We need not ascertain, however, the meaning of that term prior to the adoption of section 34—8.2. Although the statute did not become effective

until September 1, 1977, we hold, for reasons stated below, that provision and our interpretation thereof to be controlling in this case.

In absence of express language declaring otherwise, an amendatory act is ordinarily construed as being prospective in its operation. (*Wilson-Raymond Constructors Co. v. Industrial Com.* (1980), 79 Ill. 2d 45, 54-55; *General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 111; *People ex rel. American Federation of State Employees v. Walker* (1975), 61 Ill. 2d 112, 118; *People ex rel. Baylor v. Bell Mutual Casualty Co.* (1973), 54 Ill. 2d 433, 440; *New York Life Insurance Co. v. Murphy* (1944), 388 Ill. 316, 324.) This general rule is based upon the principle that the legislature may not impair the obligation of contracts (*A.S.S. Wrecking Co. v. Guaranty Bank & Trust Co.* (1972), 53 Ill. 2d 249, 253-54) or interfere with vested substantive rights. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181.) However, in the absence of a saving clause, an amendatory act may be retroactively applied where the legislature so intended and where the statute affects the remedy or matters of procedure. When a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure, without regard to whether they accrued before or after such change of law and without regard to whether or not the action has been instituted, unless there is a saving clause as to existing litigation. (34 Ill. L. & Prac. *Statutes* secs. 194, 195, at 156-57 (1958).) (See also *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342; *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 187; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337; *Grigsby v. Industrial Com.* (1979), 76 Ill. 2d 528, 532.) (See generally 1A Sutherland, Statutes and Statutory Construction sec. 22.36, at 200 (4th ed. 1972); 82 C.J.S. *Statutes* sec. 432, at 1006-07 (1953).) Changes in procedure or existing remedies will not be applied retrospectively,

however, where a vested, constitutionally protected right will be deprived by such application. *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 187.

With the above principles in mind, we find the 1977 amendment to the School Code to be controlling in this case and, therefore, applicable to the pending applications for the principal positions. There exists no vested right in any particular mode of procedure. (*Winter v. Barrett* (1933), 352 Ill. 441, 466; see 73 Am. Jur. 2d *Statutes* sec. 388, at 507 (1974); 16A Am. Jur. 2d *Constitutional Law* sec. 675, at 661 (1979).) Furthermore, we do not deem there to be a property right inherent in holding a public office; that is, the persons whose names appear on the eligibility list have no vested right in a principalship. Although we are not bound by the Federal courts' decisions, we are in agreement with the Seventh Circuit's conclusion that a candidate possessing a valid certificate from the board of examiners does not have an entitlement to a principalship. (*Webster v. Redmond* (7th Cir. 1979), 599 F.2d 793.) The amendment may, therefore, be retroactively applied.

Finally, the plaintiffs assert that the term "for merit only" has, at all times, required rank-order appointment and that section 34—8.2 neither amended nor modified the School Code's rank-order requirement. As stated above, section 34—8.2 concerns the procedural aspect of a nonvested right and is therefore to be retrospective in its application. Thus, we need not decide whether the law prior to the addition of section 34—8.2 mandated appointment by rank order on the eligibility list. However, even if the prior law did require appointment of principals by rank order, we would find section 34—8.2 to have amended, by implication, this requirement.

An implied amendment is an act which purports to be independent of, but which in substance actually modifies or adds to a prior act. (1A Sutherland, Statutes and

Statutory Construction sec. 22.13, at 139 (4th ed. 1972).) The implied amendment arises out of the inconsistency or repugnancy between the two acts. (*People ex rel. Coffman v. Illinois Central R.R. Co.* (1924), 314 Ill. 339, 342.) This court has stated on more than one occasion that although implied amendments are not favored, they are not constitutionally prohibited. (*People ex rel. Nordstrom v. Chicago & North Western Ry. Co.* (1959), 16 Ill. 2d 264, 268; *Jordan v. Metropolitan Sanitary District* (1958), 15 Ill. 2d 369, 378; *Starck v. Chicago & North Western Ry. Co.* (1955), 4 Ill. 2d 611, 617.) We have previously identified the inconsistency between a rank-order appointment requirement and a procedure utilizing community input through local nominating committees. Thus, if rank-order appointment was indeed mandated prior to October 1, 1977, such a procedure would be amended by implication by the enactment of section 34—8.2.

In conclusion, we hold that the requirement under the School Code that principals be appointed "for merit only" does not mandate that the board of education appoint persons to serve as principals solely according to the rank order of appearance on the eligibility list prepared by the board of examiners. The legislative scheme evinces an intent that the board of education have great discretion in such appointments. This intent is aptly reflected in section 34—8.2, which is to be retroactively applied.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed, except insofar as it required appointments in rank order "until a uniform system of community input is established."

*Appellate court reversed; circuit court affirmed in part and reversed in part.*