(No. 81139.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JASON DIGIROLAMO, Appellee.

*Opinion filed October 23, 1997.—Rehearing denied December 1, 1997.*

MILLER, J., joined by McMORROW, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and William Haine, State's Attorney, of Edwardsville (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson, William L. Browers and Darryl B. Simko, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Donald E. Groshong, of Williamson, Webster, Groshong, Falb & Gibson, of Alton, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Jason Digirolamo, was charged by indictment in Madison County with one count of failing to report an accident involving personal injury or death (625 ILCS 5/11—401(b) (West 1992)) and with two counts of obstructing justice by the destruction of evidence (720 ILCS 5/31—4(a) (West 1992)). A jury returned a verdict finding defendant guilty of failure to report an accident resulting in a person's death and one count of obstructing justice. The trial court sentenced defendant to concurrent terms of 30 months' probation with certain specified conditions and a fine of $3,600. The appellate court reversed defendant's conviction for failure to report an accident and remanded for a new trial, and reversed defendant's conviction for obstructing justice. 279 Ill. App. 3d 487. We allowed the State's petition for leave to appeal (155 Ill. 2d R. 315), and now affirm the appellate court judgment.

## FACTS

On April 11, 1993, the victim, 72-year-old retiree William Pranaitis, arose in the early morning hours while it was still dark outside to take his routine morning walk. His wife testified that her husband usually arose between 3:30 and 4 a.m. to take a walk and would then return home around 6:30 a.m. During Pranaitis' walks, he would take a plastic bag and a flashlight with him and pick up aluminum cans. A local police officer discovered Pranaitis' dead body lying next to a telephone pole near the intersection of Blackjack Road and Lebanon Road at 6:36 a.m. that day.

Detective Michael Ries of the Collinsville police department investigated the scene of the accident. Detective Ries observed a flashlight lying in the center of Lebanon Road, near its intersection with Blackjack Road, and a baseball hat and eyeglasses approximately

three to four feet off the road in the grass. A bag containing cans was found resting against a curb approximately 50 feet from Blackjack Road. He also observed a single set of tire tracks which entered the grassy area alongside Lebanon Road and then traveled approximately 50 to 60 feet before reentering Lebanon Road. Detective Ries surmised that these tracks, which were narrow in width, were made by two right side tires of a small car or possibly a small truck. Detective Ries also noticed that a portion of the curb on Lebanon Road, around 100 to 120 feet from where Pranaitis' body was found, was missing. Blood was in the grass from the location of Pranaitis' body to a point 75 feet away where the hat was found. No vehicle parts or skid marks were found at the scene of the accident.

Officer David Schneider, an accident reconstruction specialist from the Collinsville police department, testified that he arrived at the scene of the accident at 7:40 a.m. He observed a "scrub" mark on the curb, made by the smear of rubber from a tire, and a 48-foot-long tire mark in the grass alongside Lebanon Road. Later, on April 23, 1993, Officer Schneider examined defendant's car and found scuff marks and a small dent to the edge of the rim of the right front tire, which he testified were consistent with the "scrub" mark found on the curb at the accident scene. He also observed the following damage to defendant's car: (1) dirt in the right front wheel rim; (2) a "broken out" windshield; (3) dents on the right front quarter panel and in the right side pillar (the support from the hood to the roof); and (4) a small, depression-type dent on the right side of the roof above the pillar. There was no blood on defendant's car. Based upon Officer Schneider's examination of both the scene of the accident and defendant's car, he concluded that a motor vehicle traveling eastbound on Lebanon Road left the road at the point of the "scrub" mark and that the

right front corner of the vehicle struck the victim from behind. The impact caused the victim to be flipped onto the hood of the vehicle, with his head striking the pillar on the right side, and then propelled through the air to a resting point at the base of the telephone pole. In Officer Schneider's opinion, defendant's car could have been the one that struck Pranaitis because it displayed damage on the right side of the vehicle, which was consistent with the accident that killed the victim.

Detective Ries testified that, several days after the accident, he received a tip regarding the accident from an anonymous caller. This call prompted him to talk to Chris Digirolamo, defendant's brother. On April 21, 1993, Detective Ries and Detective Robert Vechetti interviewed Chris. Chris informed them that defendant had recently been involved in an accident. Chris took the detectives to Matt Chandler's apartment, believing that defendant's car would be located there. Detective Ries observed that defendant's car, which was a two-tone gray or silver color, had a dent 8 to 10 inches across on the right front quarter panel and a dent on the roof, which was two to three inches in diameter. Detective Ries also noticed that the column supporting the windshield on the passenger side of defendant's car had been crushed, the windshield had been removed, and the right front wheel had particles of grass and mud between the rim and the tire.

Defendant appeared as Detective Ries was photographing the car and agreed to speak with him and Detective Vechetti. Defendant informed the detectives that as he was traveling eastbound on Lebanon Road around 3 a.m. on April 11, 1993, he was bent over adjusting his radio when he hit something on Lebanon Road near Gliddon Park. Defendant initially stated that he believed he struck something, possibly a deer; however, he later said that he believed something may have been

thrown at him. Detective Ries testified that Gliddon Park is located on Lebanon Road, approximately one-quarter to three-eighths of one mile east of the intersection of Blackjack and Lebanon Roads. Detective Ries further stated that, within two or three days of the accident, he and Detective Vechetti checked all the roads nearby, including the Gliddon Park area, but did not find any dead animals.

Defendant also told the detectives that he did not stop after his accident. Later, however, defendant claimed that he did stop and look, but left when he did not see anything. In response to a question about his car's windshield, defendant stated that he removed it because his father was coming to visit and he did not want him to know he had an accident. Defendant retrieved the broken windshield, removed from his car, from a nearby dumpster. Defendant subsequently made the statement: "I guess maybe I was the one that hit the man that night."

The State presented testimony from experts who examined the victim's body and other physical evidence. Dr. Raj Nanduri, a forensic pathologist, performed an autopsy on Pranaitis on April 12, 1993. Dr. Nanduri testified that Pranaitis had extensive injuries, including large lacerations on the scalp and the back of his right leg in the knee area and a fracture to the left leg. She determined that Pranaitis' injuries were consistent with his being struck by a motor vehicle while he was upright and moving. Dr. Nanduri also determined that the injuries to the victim's head were consistent with his striking the dented right window post area of defendant's car. On cross-examination, however, she conceded that the damage to the window post could have been caused by removal of the windshield from the car. After considering all of Pranaitis' injuries, Dr. Nanduri found them to be consistent with his being struck by a car or

possibly a small truck. Dr. Nanduri admitted that she could not say that defendant's car caused the victim's injuries; however, she concluded that the car's damage was consistent with the victim's injuries.

Kenneth Knight, an expert in hair and fiber evidence, analyzed Pranaitis' clothing, samples of his hair, and debris removed from the windshield glass of defendant's car. In the debris from the windshield, Knight identified animal hair from a dog and human Caucasian hair, which was not suitable for comparison. After comparing a cotton fiber found in the debris with Pranaitis' clothing, he concluded that they did not match.

Blair Schultz, an Illinois State Police forensic chemist, compared a piece of standard laminated glass from defendant's windshield to a piece of glass from Pranaitis' clothing. He found them to have the same refractive index, which means that the two pieces of glass could have originated from the same source. The likelihood of this match was one in five, meaning that one out of every five pieces of laminated glass would have the same refractive index.

Trace chemist Cheryl Cherry testified regarding her analysis of the debris on Pranaitis' clothing and the paint from defendant's car. Although she found several different colors of paint on the victim's clothing, the paint chips were not large enough to determine if it was automotive paint. There was also no match between the paint from defendant's car and the samples taken from the victim's clothing. She explained that when a person is thrown to the ground he will pick up paint and debris in his clothing. This result also occurs when a person is walking around.

Before concluding its case, the State called several of defendant's friends as witnesses. Defendant's best friend, Matthew Chandler, testified that around 4:20

a.m. on April 11, 1993, defendant came to his apartment and showed him the broken windshield on his car. Defendant told him that he had been driving home and hit something on Lebanon Road, but that he did not know what he had hit or if something had been thrown at his car. According to Chandler, defendant said that he stopped and looked back but did not see anything. Chandler saw defendant again a couple of days later, when defendant brought his car to Chandler's apartment. They decided to replace the windshield, which had a 10- to 12-inch spider-web-type break on the passenger side with a small hole in the center, because defendant did not want his father to see it. Chandler and defendant purchased a piece of Plexiglas to replace the windshield. While cutting the Plexiglas, Chandler and defendant read an article in a Collinsville newspaper about a fatal hit-and-run accident that happened the same night that defendant's windshield got broken. Defendant initially was concerned because of the coincidence. Chandler and his brother Todd removed defendant's windshield with hammers and a broomstick handle. The windshield was not replaced with the Plexiglas because it had been cut too small. The police arrived approximately two hours following the removal of the windshield. Initially, Chandler lied to the police about defendant's coming to his apartment the night of the accident because he did not want to hurt defendant. Chandler, however, later told the police that a nervous defendant came to his apartment and told him that he had hit something on Lebanon Road near "Glen Park." Defendant was not sure if he had hit an animal or a person, or if someone had thrown something at him. Chandler admitted that he and defendant had discussed not telling anyone about the incident.

Jennifer Peoples was also at Chandler's apartment on April 11, 1993. Peoples testified that defendant ar-

rived at 4:24 a.m. and said that he had hit something, perhaps a curb, deer, dog or person, on Lebanon Road. A few days later, she went with defendant and Chandler to the "Grandpa's" store to buy Plexiglas to replace the windshield. Peoples further testified that defendant showed her some short pieces of whitish-gray hair, which were found on defendant's car. Melissa Toon also viewed the hair, which she described as gray, straight and short like a man's hair is cut. Toon conceded, however, that the hair could have been animal hair. Defendant's roommate, Brent Broshow, testified that defendant showed him three to four strands of coarse, white hair, approximately three inches long, which he believed were from an animal.

The State also presented the testimony of Tad Kicielinske and Steven Van Dyke. Kicielinske stated that defendant drove him home from a party on April 11, 1993, dropping him off around 3:30 a.m. Van Dyke stated that defendant dropped him off that night at his home sometime between 3 and 4 a.m. Both Kicielinske and Van Dyke live in Collinsville.

Defendant presented the testimony of John and Julie Carlson. The Carlsons testified that on April 11, 1993, they were delivering newspapers in their car. Around 4:45 a.m., they went through the intersection of Lebanon Road and Blackjack Road, which is not well lit. The first time through the intersection around 4:45 a.m. they did not notice anything. About 30 to 40 minutes later, between 5:15 and 5:30 a.m., they went through the intersection again and observed a flashlight. They then saw a small dark car, possibly a Japanese model or some other foreign model, which came over into their lane causing them to swerve. After seeing the car for "just a split second or two," they noticed that the passenger side had front-end damage and that the passenger side headlight was "out." The car appeared to be a newer,

two-door hatchback model, which had a longer front end than did American-made cars.

Defendant testified on his own behalf. On Sunday, April 11, 1993, around 3 a.m., defendant was driving his 1982 four-door Ford Escort on Lebanon Road just past "Glen Park" when something hit his windshield. He heard a loud bang and his windshield broke on the right side. Defendant claimed that he stopped, looked back without getting out of his car and did not see anything, so he left. He believed that someone may have thrown something at his windshield. Defendant then drove to his friend Matt Chandler's apartment because he was scared and wanted Chandler to see the car. He arrived there a little after 4 a.m. Defendant, Chandler and Kelly Johnson discussed whether he had hit a deer, a pole, a mailbox or even a person. Since defendant claimed that his car never left the road, they ruled out a mailbox, a pole, and a person because they would not be in the middle of the road.

The next day defendant discovered dents in the right quarter panel and passenger door of his car. He also found that the windshield was broken on the passenger side with a cobwebbed effect and that some hairs were lodged in the windshield. Because defendant did not want his father to see the broken windshield, he took his car to Chandler's apartment with the intention of replacing the windshield. Prior to replacing the windshield, he put a garbage bag over it because it had rained that week. On April 21, 1993, defendant's brother, Chris, told him that some police officers wanted to speak to Chris about an accident he may have witnessed. When defendant returned home from school that day, he along with Chandler and Johnson tried to remove the windshield from his car. Chandler and Johnson finally succeeded. The police arrived a few hours later. Defendant testified that it was a coincidence that the removal of

the windshield occurred the same day the police had contacted his brother. Moreover, defendant insisted that in removing the windshield, he had no intention of making it difficult for the State to analyze evidence in this case because he did not know that it was evidence in a criminal case.

Defendant admitted, however, that prior to removing his car's windshield he saw a newspaper article about a hit-and-run accident in Collinsville. The newspaper reported that the accident happened around 6:30 a.m. at the intersection of Blackjack and Lebanon Roads. At first defendant was scared and thought he was probably the hit-and-run driver, but after noting the time and location, he was sure it could not have been him.

When interviewed by the police at Chandler's apartment, defendant told them that he had been listening to the radio in his car and there was a loud crash at his windshield. Defendant also admitted telling the police that he might possibly have been the hit-and-run driver. At trial, however, defendant testified that he did not think he was the driver who struck Pranaitis.

The jury found defendant guilty of failing to report an accident involving personal injury or death and of obstructing justice by destroying the damaged windshield of his car. The jury acquitted defendant of obstructing justice for destroying hair samples from his car's windshield. Defendant subsequently was sentenced to concurrent terms of 30 months' probation and a fine.

Defendant appealed his convictions. The appellate court reversed defendant's conviction for failure to report an accident involving death and remanded for a new trial. The court held that, for a defendant to be convicted of this crime, the State must prove beyond a reasonable doubt that the defendant had knowledge that he was involved in an accident involving another person. 279 Ill. App. 3d at 492. The appellate court determined

that a new trial was required because in this case the jury was not properly instructed as to the knowledge element. The jury was instructed that the State only had to prove that defendant knew an accident had occurred. In remanding for a new trial, the appellate court held that retrial is not barred by principles of double jeopardy because the evidence was sufficient to support a conviction. 279 Ill. App. 3d at 500. The appellate court also reversed defendant's conviction for the offense of obstructing justice, finding that the State had failed to prove venue for that offense. 279 Ill. App. 3d at 498.

## ANALYSIS

### I. Failure to Report an Accident

#### A. *Knowledge Element*

The State contends that the appellate court wrongly reversed defendant's conviction for leaving the scene and failing to report the accident which killed William Pranaitis.

The relevant statutory provision, section 11—401 of the Illinois Vehicle Code, provides:

"Motor vehicle accidents involving death or personal injuries. (a) The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11—403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary.

(b) Any person who has failed to stop or to comply with said requirements shall, within 3 hours after such motor vehicle accident, or, if hospitalized and incapacitated from reporting at any time during such period, within 48 hours after being discharged from the hospital, report the place of the accident, the date, the approximate time, the

driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred. ***
    ***
    (c) Any person failing to comply with paragraph (a) *** shall be guilty of a Class A misdemeanor.
    (d) Any person failing to comply with paragraph (b) shall be guilty of a Class 4 felony." 625 ILCS 5/11—401 (West 1992).

Section 11—403, which is referred to in section 11—401, requires a motorist involved in an accident resulting in injury or death of a person or damage to a vehicle, driven or attended by any person, to: (1) give his or her name, address, registration number, and the name of the owner of the vehicle; (2) display his or her driver's license to the victim; and (3) render "reasonable assistance" to any injured person. 625 ILCS 5/11—403 (West 1992).

Defendant here was convicted under section 11—401(b). Section 11—401(b) expressly requires the State to prove the following elements: (1) the accused driver was involved in a motor vehicle accident that resulted in personal injury or death of a person; (2) the accused driver failed to stop pursuant to subsection (a) or failed to comply with the requirements set forth in section 11—403; and (3) the accused driver failed to report the accident within the requisite time period. 625 ILCS 5/11—401(b), 11—403 (West 1992). Section 11—401 does not expressly refer to a required mental state on the part of the accused. In *People v. Nunn*, 77 Ill. 2d 243 (1979), however, this court rejected the State's argument that section 11—401 is an absolute liability offense. Instead, this court held that section 11—401 implicitly requires the mental state of knowledge on the part of a motorist. *Nunn*, 77 Ill. 2d at 251-52. The court specifically determined that a conviction under section 11—401 requires the State to prove that the defendant

had knowledge that the vehicle he or she was driving was involved in an accident. *Nunn*, 77 Ill. 2d at 252. The court nevertheless declined to require the State to prove that the defendant knew that the accident caused an injury or death. *Nunn*, 77 Ill. 2d at 252.

The issue we are presented with here is whether the mental state recognized in *Nunn*, knowledge of an accident, also requires knowledge that *a person* was involved in the accident. The State maintains that, under *Nunn*, only knowledge of an accident is required. In contrast, defendant contends that *Nunn*'s holding must be limited to its facts. According to defendant, *Nunn* did not decide the issue presented here, namely, whether knowledge that a person was involved in the accident is required.

We agree with defendant that this court's decision in *Nunn* did not answer the question presented here because of the different factual context presented in that case. In *Nunn*, the defendant was involved in an accident with another *moving* vehicle. *Nunn*, 77 Ill. 2d at 245-46. Because two moving vehicles were involved, the defendant could be presumed to have known from the nature of the accident that another person was involved in the accident. Thus, the *Nunn* court did not have to consider whether "knowledge of an accident" required knowledge that a person was involved because the circumstances of the accident in that case presupposed the presence of at least one other person. Given the facts of *Nunn*, it is evident that the court did not consider the application of section 11—401 in the context of an accident between a motor vehicle and a pedestrian. *Nunn*, therefore, did not resolve the issue presented in this case, whether the mental state for a conviction under section 11—401(b) requires knowledge of an accident involving a person.

A split of authority exists among other jurisdictions

regarding the scope of knowledge required for criminal prosecutions under "hit-and-run" statutes. See Annotation, *Necessity and Sufficiency of Showing, in Criminal Prosecution under " 'Hit-and-Run' " Statute, Accused's Knowledge of Accident, Injury, or Damage*, 26 A.L.R.5th 1 (1995). There are two prevailing views among jurisdictions that have statutes where the mental state is not expressly included in the statutory description of the offense. Some jurisdictions require only knowledge of an accident, while the majority of jurisdictions additionally require that a motorist have knowledge that an injury or death was involved. *Nunn* declined to follow those jurisdictions that require knowledge of an injury. See *Nunn*, 77 Ill. 2d at 251-52. We adhere to *Nunn*'s rejection of that rule as "impos[ing] a burden that would be unrealistically difficult to sustain and would tend to defeat the public interest which is served by requiring persons involved in vehicle collisions to stop and provide identification and other personal information and to be available to render assistance if required." *Nunn*, 77 Ill. 2d at 252. We, however, hold that, for a conviction under section 11—401, the State must prove that the defendant had knowledge of an accident involving a person.

This holding best effectuates the legislative intent underlying section 11—401, as revealed by the language and purpose of that section. Section 11—401 is expressly titled "Motor vehicle accidents involving death or personal injuries." Section 11—401 specifically refers to the conduct of drivers involved in an accident resulting in injury or death to a person. In contrast, other sections of the Vehicle Code, such as sections 11—402 and 11—404, specifically address the conduct of drivers involved in accidents not involving injury to persons. Under section 11—402, a driver involved in a motor vehicle accident resulting only in damage to a vehicle that is driven or attended to by any person must stop and

remain at the scene until section 11—403's duty to give information and render aid is fulfilled. 625 ILCS 5/11—402, 11—403 (West 1992). Under section 11—404, a driver involved in an accident with any unattended vehicle or other property resulting in any damage to such other vehicle or property must stop and provide information. 625 ILCS 5/11—404 (West 1992). Notably, sections 11—402 and 11—404 make failure to comply with those sections a Class A misdemeanor only. 625 ILCS 5/11—402, 11—404 (West 1992). In contrast, section 11—401 makes failure to report an accident involving injury or death of a person, in certain circumstances, a Class 4 felony. 625 ILCS 5/11—401(b) (West 1992). Obviously, the only reason for this substantial increase in the penalty for a violation of section 11—401(b) is because a *person*, as opposed to a piece of property, has been injured. It follows, then, that the mental state required for a conviction under section 11—401(b) should require knowledge that the defendant was involved in an accident involving another person.

The legislative purpose behind section 11—401 also leads to the conclusion that the mental state should include knowledge that a person was involved. Section 11—401 specifically imposes on a driver the duty to stop and to fulfill the requirements set forth in section 11—403. 625 ILCS 5/11—401 (West 1992). Under the terms of section 11—403, a driver has the duty to provide information and render assistance to an injured person. 625 ILCS 5/11—403 (West 1992). Given the incorporation of section 11—403 into section 11—401, it is clear that the legislature enacted section 11—401 with the primary purpose of requiring a motorist involved in an accident with another person *to stop and render assistance* to the injured person. The *Nunn* court recognized that this was the primary public interest served by section 11—401. See *Nunn*, 77 Ill. 2d at 252. Because

rendering assistance requires an affirmative course of action by a driver, it necessarily follows that the driver must be aware of the facts giving rise to this duty. In other words, the driver must know of the existence of an injured person. In view of the legislature's focus on requiring a driver to render aid to an injured person, we find that it is consistent with legislative intent to require that a driver have knowledge that the accident involved another person.

We therefore hold that section 11—401 requires that a motorist have knowledge that he or she was involved in an accident that involved another person. The State must prove that mental state beyond a reasonable doubt and the jury must be instructed accordingly. By requiring the State to prove such knowledge on the part of the motorist, we have not imposed a burden on the State that is unrealistically difficult to sustain. The State can establish the requisite knowledge through circumstantial evidence. For instance, knowledge that another person was involved in the accident may be imputed to a driver from the circumstances of the accident.

In the present case, the jury was instructed that the State must prove that defendant had knowledge that he had been involved in an accident. The jury was not instructed, however, that the State had to prove that defendant had knowledge that the accident involved another person. Consequently, the jury instructions failed to properly set forth the mental state required for defendant's conviction. Defendant is therefore entitled to reversal of his conviction and a new trial in which the jury is properly instructed.

In light of our decision to remand this cause for a new trial, double jeopardy requires that we address defendant's challenge to the sufficiency of the evidence. See *People v. Jones*, 175 Ill. 2d 126, 134 (1997); *People v. McDonald*, 125 Ill. 2d 182, 201 (1988). We therefore

consider whether the evidence was sufficient to support defendant's conviction for failure to report an accident involving death.

### B. *Sufficiency of Evidence*

Defendant argues that the State failed to prove that his car was the car involved in the accident killing William Pranaitis. In the alternative, defendant contends that the evidence was not sufficient to establish that he knew a person was involved in the accident.

The standard for reviewing a defendant's challenge to the sufficiency of the evidence is well settled. As we have repeatedly stated, it is not the function of this court to retry the defendant. See *People v. Oaks*, 169 Ill. 2d 409, 457 (1996); *People v. McDonald*, 168 Ill. 2d 420, 443 (1995); *People v. Eyler*, 133 Ill. 2d 173, 191 (1989). Rather, the standard of review is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Oaks*, 169 Ill. 2d at 457-58; *People v. Bounds*, 171 Ill. 2d 1, 46 (1995); *McDonald*, 168 Ill. 2d at 443-44; *Eyler*, 133 Ill. 2d at 191. This standard applies when reviewing the sufficiency of evidence in all criminal cases, regardless of whether the evidence is direct or circumstantial. See *People v. Gilliam*, 172 Ill. 2d 484, 515 (1996); *McDonald*, 168 Ill. 2d at 444; *People v. Pintos*, 133 Ill. 2d 286, 291 (1989). Circumstantial evidence alone is sufficient to sustain a conviction where it satisfies proof beyond a reasonable doubt of the elements of the crime charged. See *McDonald*, 168 Ill. 2d at 444.

Defendant contends that the evidence was insufficient to prove that his car was involved in the accident killing William Pranaitis. Here, the circumstantial evidence against defendant showed that there was damage to the front passenger side of defendant's car that was consistent with William Pranaitis' injuries. There was

also glass from defendant's car that was linked to the glass found on the victim's clothing. In addition, defendant admitted to being in an accident in an area near the scene of the accident killing the victim in this case. Following the accident, defendant appeared nervous and ultimately sought to replace the damaged windshield of his car. There was also evidence that defendant removed whitish-gray hair strands from his car's windshield. This circumstantial evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant's car struck and killed Pranaitis.

Defendant, however, points to alleged weaknesses in the State's case, which he claims raise a reasonable doubt as to his guilt. Defendant's position is that he was involved in a separate motor vehicle accident on the night of April 11, 1993, and not the accident which killed Pranaitis. According to defendant, there are three significant evidentiary facts that support his theory. We address each of these matters separately.

Defendant first claims that there was damage to his car which is not consistent with the accident killing Pranaitis. Specifically, defendant refers to the fact that there was damage to his front passenger door. The fact that defendant's car showed some minor damage not associated with the accident at issue does not persuade us that defendant was not involved in this accident. More importantly, the evidence did show that there was damage to the right side of defendant's car that was consistent with the hit-and-run accident involving Pranaitis. Officer Schneider and Dr. Nanduri testified as to the consistency between the damage on defendant's car and the victim's injuries. The minor damage to defendant's car not attributable to this case does not raise a reasonable doubt of defendant's guilt, particularly when

considering the evidence as a whole. This court has previously held that when weighing evidence capable of producing conflicting inferences, the trier of fact is not required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. See *McDonald*, 168 Ill. 2d at 447.

Defendant next asserts that there is a lack of physical evidence placing his car at the crime scene or identifying his car as the vehicle which struck the victim. There was an absence of physical evidence showing conclusively that it was defendant's car that killed Pranaitis. Nevertheless, there was evidence that defendant was in an accident in the same area where this victim was struck and killed. Defendant admitted to hitting something near Gliddon Park during the early morning hours on April 11, 1993. Detective Ries testified that Gliddon Park is located on Lebanon Road, approximately one quarter to three eights of a mile from the intersection of Lebanon Road and Blackjack Road. Detective Ries also testified that within a few days of the accident, he and Detective Vechetti investigated all nearby roads but did not find any dead animals on the side of the road. In addition to evidence linking defendant to the area where Pranaitis was killed, there was evidence linking defendant to the scene of the accident. Blair Shultz, a forensic chemist, compared glass standards from defendant's car with the glass on the victim's clothing. He determined that the glass samples had the same refractive index and that there was a one in five possibility that they could have originated from the same source. Consequently, there was evidence connecting defendant's car to the accident scene.

Next, defendant argues that he was in Lebanon, Illinois, at the time of the accident and that there was a different car, which had front-end damage and was moving erratically, at the scene at the probable time of the

accident. Defendant claims that he was already at Matthew Chandler's apartment at the time Pranaitis was killed. Defendant specifically refers to the testimony of his friends Jennifer Peoples and Matthew Chandler. They testified that defendant arrived at Chandler's apartment between 4:20 and 4:24 a.m. Defendant also points out that John and Julie Carlson observed a small, dark-colored, possibly Japanese model, two-door hatchback car with front-end damage at the intersection of Blackjack and Lebanon Roads between 5:15 and 5:30 a.m. Defendant relies on such testimony to argue that this other car struck and killed the victim.

With respect to Peoples' and Chandler's testimony, we note that it is the function of the trier of fact to weigh the credibility of witnesses and to resolve conflicts or inconsistencies in their testimony. See *Gilliam*, 172 Ill. 2d at 515; *Eyler*, 133 Ill. 2d at 191. A reviewing court will not substitute its judgment for that of the trier of fact in determining the credibility of the witnesses and the weight of the evidence. See *People v. Sutherland*, 155 Ill. 2d 1, 17 (1992). Here, the jury may have rationally chosen to disregard their testimony given that they were the same friends who assisted defendant in his plan to hide the accident from his father by replacing his car's broken windshield. Chandler even admitted to initially lying to the police to protect defendant. Moreover, defendant's other friends Tad Kicielinske and Steven Van Dyke refuted defendant's testimony that his accident occurred around 3 a.m. Both testified that defendant drove them home on April 11, 1993. Kicielinske stated that he arrived home at 3:30 a.m., while Van Dyke testified that he arrived home between 3 and 4 a.m.

Next, we find that the Carlsons' testimony does not conclusively establish that a different vehicle struck Pranaitis. The Carlsons saw this "other" car for only a

"split second or two" in a poorly lit intersection. They did not conclusively classify the car as Japanese or any other type. John Carlson testified that "basically" the car looked to have a "longer front end" which "made [him] think Japanese or Scerocco [sic] or something." He also described the car as being small, dark in color, and appearing to be a hatchback with front-end damage. Photographs of defendant's car, which were shown to the jury, show that defendant's Ford Escort was a small car, dark gray in color, with a long hood and a sloping rear windshield, which give it the appearance of a hatchback. Moreover, there was damage to the right front portion of defendant's car, consistent with the Carlsons' testimony. Finally, the Carlsons were not certain about the exact time that they passed through the intersection of Blackjack and Lebanon Roads for a second time. Thus, the Carlsons could have seen defendant's car at the scene.

In addition to challenging his involvement in the accident killing Pranaitis, defendant further argues that the evidence was not sufficient to show that he knew he had hit a person. Defendant insists that he did not know what he had hit. We find that the evidence presented to the jury was sufficient to support a finding that defendant knew another person was involved in the accident. The evidence showed that there was damage to the windshield of defendant's car, suggesting that Pranaitis' body hit the windshield. There was also testimony that, when hit, Pranaitis' body would have flipped onto the hood of the car with his head striking the windshield. Given the damage to the windshield of defendant's car, a jury could reasonably determine that defendant saw the victim's body strike the car before being thrown onto the ground. Defendant's actions following the accident could also support a finding that defendant knew he had hit a person. Immediately following the accident,

defendant appeared tense and nervous when discussing the accident. Defendant also acknowledged the possibility that he had hit a person and sought to conceal the accident by replacing the damaged windshield of his car. Thus, the evidence was sufficient to support a finding that defendant had the requisite mental state for a conviction under section 11—401(b). Double jeopardy therefore does not preclude a new trial. See *People v. Hope*, 116 Ill. 2d 265, 279 (1986); *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). Nevertheless, we in no manner imply that we have made a finding regarding defendant's guilt that would be binding on remand. See *McDonald*, 125 Ill. 2d at 202.

For the reasons stated above, we affirm the holding of the appellate court reversing defendant's conviction and sentence for failure to report a motor vehicle accident resulting in death. We remand for a new trial on this count.

## II. Obstruction of Justice

As set forth in the facts, defendant was tried and convicted in Madison County on a charge of obstructing justice. The indictment alleged that on April 21, 1993, defendant committed the offense of obstructing justice (720 ILCS 5/31—4(a) (West 1992)) in Madison County in that he knowingly destroyed physical evidence, namely, the damaged windshield of his car, with the intent to obstruct his prosecution for failure to report an accident. The appellate court reversed defendant's obstruction of justice conviction on the basis of venue. The appellate court held that the State had failed to prove beyond a reasonable doubt that venue was in Madison County because the removal of the damaged windshield occurred in Lebanon, Illinois, which is located in St. Clair County. 279 Ill. App. 3d at 498. The State now argues that the appellate court erred because the State was not required to prove venue as a substantive element of the crime.

Section 1—6 of the Criminal Code of 1961 (720 ILCS 5/1—6 (West 1992)) sets forth the general venue provision for criminal cases. At the time of defendant's trial, section 1—6 provided that a criminal offense "shall be tried in the county where the offense was committed." 720 ILCS 5/1—6(a) (West 1992). This court has adhered to the long-held view that venue in a criminal prosecution is a material allegation which must be proved by the State beyond a reasonable doubt along with the other elements of an offense. See *People v. Adams*, 161 Ill. 2d 333, 341 (1994); *People v. Hagan*, 145 Ill. 2d 287, 300 (1991). The State is therefore required to prove at trial that the offense was committed in the county alleged in the charging instrument. As with other elements, the State may satisfy its burden of proving venue by either direct or circumstantial evidence, including the testimony of police personnel, and the description of street locations and street names by witnesses. See *People v. Eubanks*, 279 Ill. App. 3d 949, 960 (1996); *People v. Luke*, 253 Ill. App. 3d 136, 142 (1993); *People v. Caballero*, 237 Ill. App. 3d 797, 803 (1992); *People v. Nash*, 221 Ill. App. 3d 544, 545 (1991).

The State argues that a recent amendment to section 1—6 eliminates its burden of proving at trial that venue is in any particular county. The amended portion of section 1—6 provides that "[t]he State is not required to prove during trial that the alleged offense occurred in any particular county in this State." Pub. Act 89—288, eff. August 11, 1995; 720 ILCS 5/1—6(a) (West 1996). Although trial proceedings in this case concluded prior to the amendment's effective date, the State contends that the amendment operates retroactively. The State reasons that venue affects procedural and not substantive rights and that the amendment may therefore apply retroactively to this case, which was pending on direct appeal at the time the amendment was enacted.

The State thus insists that it was not required to prove at trial that defendant's act of obstructing justice took place in any particular county. We disagree with the State's retroactive application of the amendment.

Generally, an amendment to a statute will be construed to apply prospectively and not retroactively. See *Rivard v. Chicago Fire Fighters Union, Local No. 2,* 122 Ill. 2d 303, 309 (1988). This presumption can be rebutted by express statutory language or by necessary implication. See *People v. Fiorini,* 143 Ill. 2d 318, 333 (1991); *Rivard,* 122 Ill. 2d at 309. There is also an exception to this general rule of prospectivity that arises where the amendment affects only procedure. Where the legislature intends a retroactive application of the amendment and the statutory amendment relates to changes in procedure or remedies, and not substantive rights, it applies retroactively to pending cases. See *Fiorini,* 143 Ill. 2d at 333; *Rivard,* 122 Ill. 2d at 310; *Maiter v. Chicago Board of Education,* 82 Ill. 2d 373, 390 (1980).

We hold that the recent amendment to section 1—6 does not apply retroactively to this case because it effected a change in substantive law. We acknowledge that the amended version of section 1—6 eliminates the State's requirement of proving venue at trial. Nonetheless, prior to the amendment, this court recognized venue as a substantive element of the offense. See *Adams,* 161 Ill. 2d at 341. Consequently, the amendment to section 1—6 represents a substantive change in the law by altering the elements to be proved by the State in a criminal case. Moreover, the language of the amendment does not indicate a legislative intent for its retroactive application. As such, the general rule of prospectivity applies to the amendment to section 1—6. Because the amended section 1—6 does not apply to this case, the State was required to prove venue beyond a reason-

able doubt as an element of the offense of obstructing justice.

The State argues, in the alternative, that the evidence was sufficient to establish venue in Madison County. The State claims that venue lies in either Madison or St. Clair County because part of defendant's conduct in obstructing justice took place in both counties. As the appellate court noted, the actual removal of the windshield occurred in Lebanon, Illinois, which is located in St. Clair County. Nevertheless, the State contends that defendant also committed an element of the offense of obstructing justice in Madison County. The State argues that the evidence shows that defendant went to Madison County to purchase Plexiglas for the purpose of removing and replacing the damaged windshield so as to conceal the fact of the accident. The State essentially argues that because defendant purchased the Plexiglas in Madison County, he possessed in Madison County the requisite intent to obstruct his prosecution.

The State's argument must be rejected. Even assuming that the purchase of the Plexiglas was sufficient to establish venue, the State failed to prove beyond a reasonable doubt that the Plexiglas was purchased in Madison County. The evidence shows that the Plexiglas was purchased by defendant and two of his friends, Jennifer Peoples and Matt Chandler. Peoples testified that the Plexiglas was purchased at the "Grandpa's" store. Peoples initially stated that the store was located in Collinsville; however, she later claimed that it was located in either Fairmont or State Park. Defendant testified that the Plexiglas was purchased in Collinsville. Trial testimony therefore established three potential locations where the Plexiglas was allegedly purchased. The State offered no evidence that either Fairmont or State Park is located in Madison County. The State here

argues that the evidence showed that the Plexiglas was purchased in Collinsville. This contention does not support the State, however. Portions of Collinsville lie in both Madison and St. Clair Counties. See Illinois Blue Book 1995-96, at 440. We therefore agree with the appellate court that "[m]ost of the territory that comprises the incorporated limits of these three municipalities lies beyond the boundaries of Madison County." 279 Ill. App. 3d at 499. Under these circumstances, no rational trier of fact could have concluded beyond a reasonable doubt from the evidence presented that an element of the offense took place in Madison County. See *Adams*, 161 Ill. 2d at 343. Consequently, defendant's conviction for that offense must be reversed. We therefore affirm the appellate court's reversal of defendant's conviction for the offense of obstruction of justice.

## CONCLUSION

For the reasons stated, we affirm the appellate court's reversal of defendant's conviction for failure to report an accident involving personal injury or death, and remand for a new trial. We also affirm the appellate court's holding reversing defendant's conviction for obstructing justice.

*Appellate court judgment affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that section 11—401 of the Illinois Vehicle Code (625 ILCS 5/11—401 (West 1992)) requires, as an element of the offense, that a hit-and-run driver who fails to report an accident have had knowledge of the involvement of another person in the accident. In *People v. Nunn*, 77 Ill. 2d 243 (1979), this court declined to impose on the plain language of the statute the requirement that a driver have known that injury or death resulted from the collision. The court explained:

"We consider that to show a violation of section 11—401 the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident or collision. We do not, however, hold that it is necessary for the prosecution to show also that the accused knew that injury or death resulted from the collision. To require this additional proof would impose a burden that would be unrealistically difficult to sustain and would tend to defeat the public interest which is served by requiring persons involved in vehicle collisions to stop and provide identification and other personal information and to be available to render assistance if required." *Nunn*, 77 Ill. 2d at 252.

I agree with what this court said in *Nunn*, and I would continue to adhere to the holding in that case.

The majority attempts to distinguish *Nunn*, however, on the ground that the court was not required to consider in that case whether a defendant must also have had knowledge that another person was involved in the accident. Because the collision in *Nunn* involved two moving vehicles, the involvement of another driver was implicit in the circumstances of the accident. The majority goes on to conclude that section 11—401 requires the State to prove that a hit-and-run driver have had knowledge that another person was involved in the accident.

The plain language of the statute does not support the majority's construction. The duty to stop imposed by section 11—401 of the Vehicle Code is not dependent on the driver's knowledge of the involvement of another person in the accident. Related measures found in sections 11—402 and 11—404 of the Vehicle Code (625 ILCS 5/11—402, 11—404 (West 1992)) similarly require drivers to stop and provide appropriate assistance or information, as the case may be. Although the nature of the harm caused in the accident determines what the driver must do after he or she stops, the duty to stop remains a constant in these provisions. A driver who does not stop

54

to determine whether someone has been injured and who does not make a report of the accident does so at his peril. Today's decision simply reduces drivers' duties to stop and give necessary assistance and information. The statute does not require such a result, and I respectfully dissent from that portion of the majority opinion.

I also disagree with the majority's determination that the defendant's conviction for obstruction of justice must be reversed because the State failed to establish venue of the offense in Madison County. Consistent with the views I expressed in my concurrence in *People v. Adams*, 161 Ill. 2d 333, 346 (1994) (Miller, J., concurring), I believe that the recent amendment to the venue statute, which codified the principles set forth in the *Adams* concurrence by relieving the prosecution of any duty to establish "that the alleged offense occurred in any particular county in this State" (720 ILCS 5/1—6(a) (West 1996)), affects a matter of procedure only and therefore may be applied retroactively. See *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 310 (1988).

JUSTICE McMORROW joins in this dissent.