**2022 IL 126645**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126645)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DONALD LEIB, Appellant.

*Opinion filed June 16, 2022.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Justices Garman, Theis, Michael J. Burke, and Carter concurred in the judgment and opinion.

Chief Justice Anne M. Burke dissented, with opinion, joined by Justice Neville.

**OPINION**

¶ 1　　Defendant, Donald Leib, was charged in the circuit court of Cook County with being a child sex offender in a school zone in violation of section 11-9.3(a) of the Criminal Code of 2012 (Code). 720 ILCS 5/11-9.3(a) (West 2014). Following a bench trial, the circuit court found defendant guilty and sentenced him to one year in prison. He appealed, arguing that he was not proven guilty beyond a reasonable

doubt because the State failed to establish that he was on "real property comprising any school" (see *id.*). In the alternative, defendant argued that, even if the property at issue was properly considered "real property comprising any school," the State failed to establish that defendant knew he was on such property. The appellate court affirmed (2020 IL App (1st) 170837-U), and we allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). For the following reasons, we affirm the appellate court's judgment.

¶ 2                                     BACKGROUND

¶ 3      In September 2015, the State charged defendant with knowingly being present on real property comprising any school when persons under the age of 18 are present in the building or on the grounds. See 720 ILCS 5/11-9.3(a) (West 2014). Defendant executed a jury trial waiver, and a bench trial was held before the circuit court of Cook County on December 5, 2016.

¶ 4      At defendant's trial, the pastor of Queen of Martyrs Parish, Reverend Edward Mikolajczyk, testified for the State regarding the general layout of the parish's property. He testified that the parish includes a church at 103rd Street and Central Park Avenue, a school with a connected gym building at 3550 West 103rd Street, and a rectory at 10233 Central Park Avenue. He further testified that the parish owns a parking lot (the St. Louis Avenue parking lot), which is located at 103rd Street and St. Louis Avenue, across the street adjacent to the gym. Reverend Mikolajczyk acknowledged that the school's name is not displayed on the gym building but testified that the St. Louis Avenue parking lot, although located across the street from the gym building, is school property.

¶ 5      Reverend Mikolajczyk also testified that the parish was hosting an annual festival between September 24 and September 26, 2015. He stated that the festival, which included a carnival with rides for children in the St. Louis Avenue parking lot, was a combined fundraiser for the parish church and school. Reverend Mikolajczyk testified that the festival's flyer advertised the event to be "under [the] auspices of Queen of Martyrs" and that, although the flyer did not refer directly to the school, "people underst[oo]d that as being the parish and the school fundraiser."

- 2 -

¶ 6       Defense counsel then showed Reverend Mikolajczyk several photographs of the buildings comprising the parish complex, which were admitted into evidence. Reverend Mikolajczyk identified the grounds of the parish and the school, a parking lot immediately behind the school, and the St. Louis Avenue parking lot, which is across St. Louis Avenue from the gymnasium. He acknowledged that the gymnasium building contained lettering identifying it as "Queen of Martyrs John Vitha Hall" and did not contain any lettering or markings indicating that it is a gymnasium or part of a school.

¶ 7       Reverend Mikolajczyk identified a photograph of a sign located in a corner of the St. Louis Avenue parking lot, which reads "Queen of Martyrs Bingo" and gives the information regarding when bingo is held. He then testified that bingo is held in the gymnasium building on Thursday evenings and children are not invited. Finally, he testified that, while a third party would need to ask permission from the church to use the parking lot, the school would not need permission from the church because "the church and the school are synonymous so if there's something that needs to be used by the school and it [a]ffects the parking lot *** the church would take care of that."

¶ 8       Kathleen Tomaszewski testified that in 2015 she was the principal of Queen of Martyrs School, which served pre-kindergarten through eighth grade. She testified that, to her knowledge, the festival was a fundraiser for the school and parish and consisted of a carnival, games, food, entertainment, and raffle. The carnival and rides for the younger children were in the St. Louis Avenue parking lot, and the street between the St. Louis Avenue parking lot and the gymnasium was blocked off as well for the festival. Other parts of the festival were in the alley between the school building/gymnasium and a parish convent, leading to the parking lot directly behind the school. All the festival areas were thus open and connected to each other. Ms. Tomaszewski testified that she did not know defendant, he was not the parent or guardian of a student, and he was not given permission to come to the school.

¶ 9       During cross-examination, Tomaszewski acknowledged that the festival was open to the public, its proceeds supported the school and church, and the flyer advertising "Queen of Martyrs Fest" did not mention the school. She noted, however, that the flyer stated there were "children[']s games in the St. Joe's room," which she testified is located inside the school. She testified that, while the sign in

the St. Louis Avenue parking lot advertising bingo does not mention the school, the church gives some of the bingo proceeds to the school. Tomaszewski further testified that she told a defense investigator in August 2016 that the school did not then use the St. Louis Avenue parking lot for recess, only for student drop off and pickup, parking for athletic events, scout meetings, and car washes. She stated that she did not believe there was a sign indicating that it was the lot where children were dropped off. In fact, she testified that, other than the bingo sign, there was no other signage on the lot that would indicate that it is school property.

¶ 10        Defendant's neighbor, Jeanne Cassidy, testified for the State that on the evening of September 26, 2015, she attended the annual Queen of Martyrs Fest and observed defendant standing in front of a carnival ride in the St. Louis Avenue parking lot. Knowing defendant to be a registered sex offender, Cassidy informed a uniformed police officer who was attending the festival of defendant's presence and showed the officer a photograph of defendant on her phone. Cassidy watched the officer escort defendant out of the festival, and later that evening, Cassidy filed a police report. Cassidy testified that when she informed defendant the next morning that she had filed the report, he responded that he "understood what [her] concerns were." She testified on cross-examination that, although she is not a parishioner of the church, she identified the carnival as "the school carnival." She admitted, however, that on direct examination she had identified it as "the Queen of Martyrs Parish Carnival." Finally, she testified that she never saw defendant on the side of St. Louis Avenue on which the gymnasium is located.

¶ 11        Chicago police officer Daniel McGreal testified that he attended the Queen of Martyrs Fest to see his family during his shift that evening. Officer McGreal described the event as a carnival held by the school, Queen of Martyrs, and the church that is located on that corner, which extended through the back of the school into a parking lot in the back on St. Louis Avenue. He testified that there were other rides for kids behind the gymnasium and the school "and then you walk through a door that goes through the school to the back parking lot," where there were bands and food vendors.

¶ 12        Officer McGreal stated that, as he was walking through the St. Louis Avenue parking lot, Jeanne Cassidy approached and notified him that defendant was at the festival. Eventually, Officer McGreal confronted defendant, requested

- 4 -

identification, and asked defendant to walk to his squad car while he ran defendant's information. Officer McGreal told defendant that "he shouldn't be here, and [defendant] agreed" and left without incident.

¶ 13    Following Officer McGreal's testimony, the parties stipulated that defendant was convicted in 2007 of child abduction pursuant to section 10-5(b)(10) of the Code (720 ILCS 5/10-5(b)(10) (West 2006)), for attempting to lure a child under the age of 16 years into a vehicle without parental consent. A certified statement of defendant's conviction, from the circuit court of Cook County, was admitted into evidence.

¶ 14    After the State rested, defendant filed a motion for a directed verdict, arguing that the State had not established beyond a reasonable doubt that defendant knew the St. Louis Avenue parking lot is "real property comprising any school," when "for all appearances" the parking lot is church property. Defense counsel argued that the St. Louis Avenue parking lot "at best" may have been used by students but that "dual usage" did not suggest that the lot is school property. The State responded that the festival was a school fundraiser on property used for school functions. The circuit court denied the motion.

¶ 15    Thereafter, defendant called Robert Pellegrini, chairperson of the Queen of Martyrs Fest planning committee and a parishioner of 47 years. Pellegrini identified a photograph of the St. Louis parking lot with the bingo sign on the corner. Pellegrini acknowledged that the flyer did not state that the festival was for a "school purpose" and described the St. Louis Avenue parking lot as the "school, church, parish parking lot."

¶ 16    Defendant's brother, Robert, testified that he invited defendant to attend the festival with him and his family. A parishioner of Queen of Martyrs for seven years, Robert testified that he believed the St. Louis Avenue parking lot is "part of the church" and "not school property." Robert testified that he was aware that his brother is not supposed to be around children in a school area and claimed that he would not have brought defendant if he did not believe the festival was a church function and on church property.

¶ 17    Irene Ahern Smith, the business manager at Queen of Martyrs Parish for 20 years, similarly testified that the St. Louis Avenue parking lot where the carnival

was held is owned by the Queen of Martyrs Parish and that "[y]ou can't really differentiate between the parish and the church or the church and the school because the Federal Government identifies us under one Federal ID number. *** We're all one Federal ID number."

¶ 18     Defendant also presented the stipulated testimony of Evergreen Park detective Anthony Signorelli that his police report of the offense described the "place of incident" as a "church, synagogue, or *** temple." The defense also moved to admit its exhibits, including the photographs of the parish complex, into evidence, which the circuit court permitted.

¶ 19     The circuit court found defendant guilty of being a child sex offender knowingly present on real property comprising any school. 720 ILCS 5/11-9.3 (West 2014). The circuit court noted that, although the defense theory of the case was that a difference existed between school and church property, Reverend Mikolajczyk was "pretty clear" that it was "all one." The circuit court also noted that the title of section 11-9.3 of the Code included the phrase "[p]resence within [a] school zone by a child sex offender" (see *id.*) and that testimony established St. Louis Avenue was blocked off for the festival, which to the circuit court meant that the St. Louis Avenue parking lot was part of the school zone for the day.

¶ 20     Defendant filed a posttrial motion requesting a new trial, in which he argued that the circuit court improperly found the word "zone" important, when that word was only mentioned in the title of the statute, not the section under which he was charged and convicted. Defendant also argued that the circuit court improperly focused on what he "should have known," rather than what he knew. The circuit court denied defendant's motion. After a sentencing hearing, the circuit court sentenced defendant to 12 months in prison.

¶ 21     On appeal, defendant argued his conviction should be reversed because the State did not prove beyond a reasonable doubt that the St. Louis Avenue parking lot is "real property comprising any school." In the alternative, he argued that, if the St. Louis Avenue parking lot constituted school property within the meaning of the statute, the State nonetheless failed to prove his knowledge beyond a reasonable doubt.

¶ 22    In a split decision, the appellate court affirmed. 2020 IL App (1st) 170837-U. As a matter of law, the appellate court found that, because the Code's "definition of school includes its grounds, *i.e.*, the area around and belonging to school buildings," "the parking lot of a school would qualify as part of the school grounds" and, thus, as " 'real property comprising any school.' " *Id.* ¶ 26. The majority further rejected defendant's argument that real property comprising any school must be contiguous with the school (*i.e.*, not separated by a public street), reasoning that defendant's interpretation runs "counter to [both] the statute's intent[ ] to prevent the presence of child sex offenders on school grounds where children congregate" and "the reality of urban school campuses." *Id.* ¶ 27. The majority then found that, "taking the evidence in the light most favorable to the State, a rational trier of fact could have found that the St. Louis [Avenue] parking lot qualified" as school property: among other things, the "evidence established that it was used for student dropoff and pickup, recess, and parking for athletic events, scout meetings, and car washes." *Id.* ¶ 28.

¶ 23    As to the knowledge element of section 11-9.3(a), the majority held that "a rational trier of fact could have found that defendant knew that he was present on real property comprising a school." *Id.* ¶ 31. The majority based its reasoning on multiple witnesses testifying that the school and the church were a single entity, that the festival's purpose was to raise funds for a parish that included a parochial elementary school, and that " 'hundreds' of children were present." *Id.*

¶ 24    Presiding Justice Mikva dissented, arguing that, although the parking lot where the festival occurred was part of the grounds of the school and that defendant was prohibited from being there under section 11-9.3(a), the State failed to prove beyond a reasonable doubt that defendant knew he was on real property comprising any school. *Id.* ¶¶ 38-46 (Mikva, P.J., dissenting). We granted defendant's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 25                                    ANALYSIS

¶ 26    On appeal, this court is asked to resolve two issues: (1) whether the St. Louis Avenue parking lot is properly considered "real property comprising any school" within the meaning of section 11-9.3(a) of the Code (720 ILCS 5/11-9.3(a) (West 2014)) and, (2) if so, whether the evidence is sufficient to prove that defendant was

present on the St. Louis Avenue parking lot knowing that it was "real property comprising any school" on the evening in question. We address these issues in turn.

¶ 27                    "Real Property Comprising Any School"

¶ 28        The parties agree that the issue of whether property constitutes "real property comprising any school" for the purposes of section 11-9.3(a) of the Code (*id.*) is a question of first impression in Illinois.[1] Issues of statutory construction are questions of law subject to *de novo* review. *In re Jarquan B.*, 2017 IL 121483, ¶ 21. The primary objective of statutory interpretation is to ascertain and give effect to the intent of our legislature. *Id.* ¶ 22. This inquiry begins with examining the plain and ordinary meaning of the statutory language, which is the surest and most reliable indicator of legislative intent. *Id.* We construe the statute as a whole and afford the language of the statute its plain and ordinary meaning. *People v. Legoo*, 2020 IL 124965, ¶ 14. Where that language is clear and unambiguous, we must apply the statute without further aids of statutory construction. *Id.* Thus, we begin our analysis with the language of section 11-9.3(a) of the Code, which provides, in relevant part, as follows:

> "It is unlawful for a child sex offender to knowingly be present in any school building, *on real property comprising any school*, or in any conveyance owned, leased, or contracted by a school to transport students to or from school or a school related activity when persons under the age of 18 are present in the building, *on the grounds* or in the conveyance \*\*\*." (Emphases added.) 720 ILCS 5/11-9.3(a) (West 2014).

¶ 29        Defendant argues that the St. Louis Avenue parking lot does not constitute "real property comprising any school" because it is separated from the school building and connected gymnasium building by a public street and, thus, is not contiguous with the school buildings. In support of his argument, defendant cites three cases from other jurisdictions. Of course, while this court is open to consideration of such

---

[1]We note that while this case was on appeal before this court the Appellate Court, Second District, found that a high school field house parking lot was "real property comprising any school" for purposes of section 11-9.3(a) of the Code (720 ILCS 5/11.9.3(a) (West 2018)). *People v. Lowe*, 2022 IL App (2d) 190981, ¶ 1.

cases to benefit from any wisdom that may be contained therein, we are not bound by those decisions insofar as their applicability is argued on issues relating solely to state law. *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d. 257, 276 (2001). With these principles in mind, we turn to these three cases.

¶ 30　　In two of the cases cited by defendant, courts in other states found that property that was contiguous to the school did constitute "property comprising any school" for the purposes of those states' statutes, which prohibited certain activities within 1000 feet of such property. See *Commonwealth v. Paige*, 768 N.E.2d 572, 573-74 (Mass. App. Ct. 2002); *State v. Peterson*, 490 N.W.2d 53, 53 (Iowa 1992). However, we note that a holding that contiguous property does qualify as "property comprising any school" is not tantamount to a holding that property that is not contiguous cannot qualify as "property comprising any school." Accordingly, we find these cases to be of little value in evaluating the case before us.

¶ 31　　In the third case cited by defendant, a Florida appellate court found, with little analysis, that "an overflow parking lot owned by a school" (but separated from it by a soccer field) was not "property comprising any school" under Florida law prohibiting the purchase of cocaine within 1000 feet of such property. *Stamps v. State*, 620 So. 2d 1033, 1033 (Fla. Dist. Ct. App. 1993). In so holding, the court reasoned that the terms "own" and "comprise" are not synonymous and that the rule of lenity applied. For the following reasons, we find *Stamps* to be unpersuasive to our analysis of section 11-9.3 of the Code.

¶ 32　　While section 11-9.3(c)(4) of the Code (720 ILCS 5/11-9.3(d)(15) (West 2014)) defines the term "school" as "a public or private preschool or elementary or secondary school," the phrase "real property comprising any school" is undefined in the statute. In this situation, we may look to the dictionary to discern an undefined term's plain and ordinary meaning. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 78. In doing so, we note that the plain meaning of the word "comprising" is not synonymous with "contiguous." For property to be "contiguous" with a school, it must be "touching along a boundary or at a point." Merriam Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/contiguous (last visited Apr. 26, 2022) [https://perma.cc/UY3J-TQZS]. In contrast, property can be "comprising" a school in multiple situations, as "comprising" has multiple meanings. See Merriam Webster Online Dictionary,

https://www.merriam-webster.com/dictionary/comprise (last visited Apr. 26, 2022) [https://perma.cc/DX7W-TWML]. Under these definitions, property can be "comprising" a school if (1) it is "made up of" the school, (2) it constitutes the school, or (3) it is "include[d] especially within a particular scope" of the school. *Id.* Thus, there is nothing in the plain language of the statute that requires that property be contiguous with the school for it to be within the scope of the statute's requirements.

¶ 33     In interpreting a statute, each word, clause, and sentence must be given a reasonable construction, if possible. See *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14. We agree with the State that, by providing that a sex offender is prohibited from being present on "real property comprising any school" when children are present "on the grounds," the legislature intended that these terms refer to the same area. Any other construction would defy logic. The applicable definitions of the term "grounds" include (1) "an area used for a particular purpose" and (2) an "area around and belonging to a house or other building." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/grounds (last visited Apr. 26, 2022) [https://perma.cc/EQ5P-E5HL].

¶ 34     Here, there is evidence that the St. Louis Avenue parking lot is used for school purposes and is owned by the parish, which owned the church and school. In addition, there is evidence that the church and school were connected to each other and considered to be synonymous. Accordingly, we find that the St. Louis Avenue parking lot is "real property comprising any school" for purposes of section 11-9.3(a) of the Code. 720 ILCS 5/11-9.3(a) (West 2014). Having determined that the St. Louis Avenue parking lot is a prohibited location for a sex offender pursuant to section 11-9.3(a), we next consider whether the evidence was sufficient to support defendant's conviction.

¶ 35                              Sufficiency of the Evidence

¶ 36     In reviewing the sufficiency of the evidence in a criminal case, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Brand*, 2021 IL 125945, ¶ 58. It is the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). Regardless of whether defendant received a bench or jury trial, a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *Id.* at 225.

¶ 37     Here, defendant argues that the evidence was insufficient to convict him because there was no evidence that, by attending the carnival on the St. Louis Avenue parking lot, he was "knowingly" on "property comprising any school." Pursuant to section 4-5 of the Code (720 ILCS 5/4-5 (West 2014)) a person acts knowingly when he is consciously aware that the circumstances described by the statute defining the offense exist. Moreover, knowledge of a material fact includes awareness of the substantial probability that the fact exists. *Id.* Thus, if there is circumstantial evidence in the record from which a reasonable fact-finder could find that defendant had an awareness of the substantial probability that the St. Louis Avenue parking lot was part of the grounds of the Queen of Martyrs Parish school, then we will not disturb the circuit court's judgment. Knowledge is often proven by circumstantial evidence rather than direct proof because it is the mental element of an offense and, as such, is rarely proven by direct evidence. *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 20 (citing *People v. Faginkrantz*, 21 Ill. 2d 75, 80 (1960)). An admission by a defendant is not required for the trier of fact to conclude that a defendant had knowledge of something. *Id.*

¶ 38     With these principles in mind, we review the evidence of record to determine whether circumstantial evidence exists that supports a reasonable inference that defendant had an awareness of the substantial probability that the St. Louis Avenue parking lot is part of the grounds of the Queen of Martyrs Parish school. In so doing, we find such evidence in the record. The Queen of Martyrs Parish has a large campus consisting of a church, school, and gymnasium. Defendant's brother had been a parishioner there for seven years, and while he testified that he thought the St. Louis Avenue parking lot is "church property" and not "school property," it is within the circuit court's province to determine the credibility of that testimony. The reverend testified that people considered the church and school to be synonymous, and both Officer McGreal and Ms. Cassidy, who were not parishioners, testified consistently with that notion, that they believed the festival to be a school function. In addition, the St. Louis Avenue parking lot is located

- 11 -

closer to the school and gymnasium than it is to the church, which is on the opposite side.

¶ 39 The layout of the festival itself also lends support to the proposition that defendant was aware of a substantial probability that the St. Louis Avenue parking lot is located on school grounds. There were children's rides in that parking lot, and there is evidence that the children's rides continued across the street, which had been blocked off for the festival, to the alley behind the gymnasium and school and that the school was open to where one could walk through to the back of the school, where there was music and food vendors. In fact, there is testimony in the record that all these areas of the festival were open and connected to each other. While the evidence showed that defendant stayed in the St. Louis Avenue parking lot, by the maps in evidence it can be inferred that he would have been able to see that the rides continued across the street and behind the gymnasium and school.

¶ 40 Finally, there is evidence of defendant's conduct that a reasonable fact-finder could find to support the proposition that he was aware of the substantial probability that he was present on school grounds. When Officer McGreal told defendant that he should not be there, defendant agreed and left without protest. Also, when Ms. Cassidy informed defendant the next morning that she had filed a police report, he responded that he understood what her concerns were. While there is also evidence in the record to suggest that at least some parishioners and members of the public understood the St. Louis Avenue parking lot to be "church property," we will not substitute our judgment for that of the circuit court on issues involving the weight of the evidence or the credibility of witnesses. See *Siguenza-Brito*, 235 Ill. 2d at 224-25. For these reasons, we find that the evidence presented in the bench trial is not so improbable or unsatisfactory as to create a reasonable doubt of defendant's awareness of the substantial probability that he was on the grounds of the St. Martyrs Parish school when he attended the festival on September 26, 2015.

¶ 41                                              CONCLUSION

¶ 42 For the foregoing reasons, we affirm the decision of the appellate court, which affirmed defendant's conviction for a violation of section 11-9.3(a) of the Code (720 ILCS 5/11-9.3(a) (West 2014)).

¶ 43        Judgments affirmed.

¶ 44        CHIEF JUSTICE ANNE M. BURKE, dissenting:

¶ 45        I agree with the majority that a rational trier of fact could have found, viewing the evidence in the light most favorable to the State, that the parking lot where defendant was present constituted "real property comprising any school" (720 ILCS 5/11-9.3(a) (West 2014)). I part ways with the majority on its second holding—that the trial evidence was sufficient to prove beyond a reasonable doubt that defendant was "knowingly" present on real property comprising a school when persons under the age of 18 were present. *Id.* None of the evidence the majority cites is relevant or probative of the knowledge element of the offense. The complete lack of evidence at trial that defendant either knew or was aware of the substantial probability that the St. Louis Avenue parking lot was school property is fatal to the prosecution's case. For this reason, I respectfully dissent.

¶ 46                                    ANALYSIS

¶ 47        Defendant was charged with, and convicted of, violating section 11-9.3(a) of the Criminal Code of 2012, which provides: "It is unlawful for a child sex offender to knowingly be present *** on real property comprising any school *** when persons under the age of 18 are present *** on the grounds ***." *Id.*

¶ 48        At trial, defendant's brother, Robert Leib, testified that he invited defendant to attend the "Queen of Martyrs Fest" with Robert's family on Saturday, September 26, 2015. On that date, at approximately 8 p.m., Robert; defendant; and Robert's son, daughter, and grandson parked one block away from the fest and walked to a parking lot containing carnival rides and games. The parking lot was at the northeast corner of 103rd Street and St. Louis Avenue in Evergreen Park, across the street from the Queen of Martyrs Parish hall, church, and school. A sign posted at the corner of the parking lot advertised bingo and raffles on Thursday evenings for the Queen of Martyrs Parish. Witness testimony was uniform that the bingo sign was the only sign in the parking lot and there were no other signs indicating what the property was used for or who owned the property.

¶ 49 Robert testified that he and defendant went to buy tickets at a ticket booth because his grandson wanted to ride a roller coaster. They then met Robert's daughter and grandson in front of the roller coaster. Shortly afterward, a police officer approached them and asked defendant whether he was a sex offender. The officer then asked them to go with him to his police vehicle across the street. Robert testified that he had been a parishioner at Queen of Martyrs Parish for seven years. He stated he was aware of his brother's sex offender restrictions and would not have invited him if he did not believe the fest was a church function on church property.

¶ 50 One of defendant's neighbors, Jeanne Cassidy, was at the fest when she saw defendant in the parking lot with his family in front of the roller coaster. She testified that she knew defendant was a registered sex offender and believed he was not allowed to be at the fest. She therefore notified a nearby police officer as to defendant's presence.

¶ 51 Chicago police officer Daniel McGreal testified that, after speaking with Cassidy, he approached defendant and asked for his name and identification. Defendant cooperated and showed his identification. Officer McGreal asked defendant to walk with him to his police vehicle so that he could run his name. Defendant did so. A search of defendant's name did not reveal any warrants or information about defendant's background as a registered sex offender. Officer McGreal then testified:

> "So as I talked to him I told him I believe he shouldn't be here, and he agreed. And he agreed to leave.
>
> Q. And he agreed to leave, and then he did leave that area from the carnival?
>
> A. Yes, correct."

¶ 52 Robert testified consistently with Officer McGreal's testimony as to defendant's actions. He testified that, after Officer McGreal took defendant's information, he "told us to leave because people were uncomfortable we were there." They left immediately afterward.

¶ 53 The following day, Cassidy went to defendant's house and knocked on his door. She told defendant that she had made a formal complaint to the Evergreen Park

Police Department stating that he was present at the fest. Cassidy testified that defendant "said he understood what my concerns were."

¶ 54 Following the presentation of evidence and closing arguments, the circuit court found defendant guilty of the charged offense and sentenced him to one year in prison. On appeal, defendant argued that the evidence was insufficient to convict him beyond a reasonable doubt. A divided appellate court panel affirmed defendant's conviction. 2020 IL App (1st) 170837-U. This appeal followed.

¶ 55 In a case involving a challenge to the sufficiency of the evidence, such as this one, "a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Gonzalez*, 239 Ill. 2d 471, 478 (2011).

¶ 56 Section 11-9.3(a) provides, in relevant part, that "[i]t is unlawful for a child sex offender to *knowingly* be present *** on real property comprising any school *** when persons under the age of 18 are present *** on the grounds." (Emphasis added.) 720 ILCS 5/11-9.3(a) (West 2014). "The State must present sufficient evidence from which an inference of knowledge can be made, and any inference must be based on established facts and not pyramided on intervening inferences." *People v. Weiss*, 263 Ill. App. 3d 725, 731 (1994). Accordingly, if the State failed to introduce established facts to prove that defendant knew he was on real property comprising a school within the meaning of the statute, defendant's conviction should be overturned.

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.

(b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2014).

¶ 57    A defendant commits an offense "knowingly" when he "knows all of the facts that make his conduct illegal." *McFadden v. United States*, 576 U.S. 186, 194-95 (2015). Knowledge may be proven through direct evidence or circumstantial evidence. *People v. Ortiz*, 196 Ill. 2d 236, 260 (2001). Importantly, "knowledge" in a criminal prosecution involves conscious awareness; " 'knowledge' is not the same as 'should have known.' " *People v. Nash*, 282 Ill. App. 3d 982, 986 (1996). For this reason, at least one court has held that a registered sex offender who unknowingly enters a restricted area is not in violation of a statute that prohibits "knowingly" being present there, so long as he leaves the area immediately upon learning that he is in fact in a restricted area. See *Does 1-5 v. Cooper*, 148 F. Supp. 3d 477, 487-88 (M.D.N.C. 2015) (interpreting a North Carolina state statute providing that a sex offender cannot "knowingly be at" one of the restricted zones specified in the statute (N.C. Gen. Stat. § 14-208.18(a) (2011))).

¶ 58    In this case, the evidence admitted at trial does not support the proposition that defendant either knew or was aware of the substantial probability that the St. Louis Avenue parking lot was school property. See 720 ILCS 5/11-9.3(a) (West 2014); *id.* § 4-5(a). Indeed, the State introduced no affirmative evidence, either circumstantial or direct, to establish defendant's knowledge of the facts making his conduct illegal. Rather, all the evidence introduced at trial refutes that defendant was aware he was present on real property comprising a school.

¶ 59    No evidence was introduced at trial of any visible signifiers that would have put defendant on notice that he was in a school parking lot. The witnesses uniformly testified that there were no signs, banners, or markings of any kind in the vicinity of the parking lot indicating that it was school property. The witnesses testified that the only sign advertised a church function—bingo and raffles on Thursday evenings. In addition, the flyer for the fest advertised the "Queen of Martyrs Fest" and listed attractions including live music, food, beer, carnival rides, and games. The flyer did not mention the school at all. Nor was there any evidence that defendant was familiar with the property or had ever set foot on the property before that night. Thus, there were no external, objective indicators that would have notified defendant that he was present on property comprising a school.

¶ 60    Despite the total lack of evidence that defendant was aware he was on school property, the majority nevertheless reaches the opposite conclusion. The majority

cites the following evidence: (1) testimony that some witnesses considered the parking lot to be school property, (2) the layout of the fest, and (3) the fact that defendant left the fest without protest and told Cassidy the next day that he understood her concerns. None of this evidence is probative of defendant's knowledge that he was present on school property, let alone sufficient to establish the *mens rea* element of the offense beyond a reasonable doubt. In fact, the evidence of defendant's conduct supports his claim that he was *unaware* of the nature of the parking lot.

¶ 61 The majority first cites the testimony of Reverend Mikolajczyk, who testified that "people considered the church and school to be synonymous," as well as that of Officer McGreal and Cassidy, who testified "that they believed the festival to be a school function." *Supra* ¶ 38. This testimony is not relevant to the issue of defendant's knowledge. "Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." *People v. Lewis*, 165 Ill. 2d 305, 329 (1995). The fact that several witnesses testified to their personal belief that they considered the parking lot to be school property is not relevant to *defendant's* knowledge. There was no evidence that defendant knew any of the State's witnesses or was privy to their personal beliefs or perceptions as to whether the parking lot was school property or church property.

¶ 62 The only scenario in which this testimony might be slightly relevant would be if there were evidence that everyone in the parish and neighborhood knew that the parking lot was school property. This was clearly not the case. Irene Smith, the parish business manager for the past 20 years, testified that the parking lot had been considered church property for as long as she had worked there. Robert Pellegrini, the chairperson for the fest, testified that the parking lot was a parish lot and the fest was a church function. Defendant's brother, Robert, a parishioner for seven years, testified that he considered the parking lot to be the church parking lot. He also testified that he would not have invited defendant to the fest had he known that the property was school property. Finally, the police report referred to the place of incident as a "church, synagogue, or temple."

¶ 63    Thus, the evidence shows there was considerable disagreement as to the nature of the parking lot. On this point, I agree with the dissenting justice in the appellate court that

> "[t]he fact that there was a genuine disagreement by disinterested witnesses as to whether or not this parking lot was part of a school or part of a church undermines any suggestion that [defendant] knew that this was school property.*** In short, there is simply no way that [defendant] can be charged with knowledge of something which was not marked by any signage and on which even the witnesses and the church employees could not agree." 2020 IL App (1st) 170837-U, ¶ 41 (Mikva, P.J., dissenting).

¶ 64    The majority also finds that the location of the parking lot and the layout of the fest "lends support to the proposition that defendant was aware of a substantial probability that the St. Louis Avenue parking lot is located on school grounds." *Supra* ¶ 39. The majority cites evidence that there were children's rides in the parking lot, that the rides continued across the street to the alley behind the school, and that the school was open to where one could walk through to the back of the school, where there were food vendors and music. *Supra* ¶ 39. The majority finds, "[w]hile the evidence showed that defendant stayed in the St. Louis parking lot, by the maps in evidence it can be inferred that he would have been able to see that the rides continued across the street and behind the gymnasium and school." *Supra* ¶ 39. This inference is wholly misinformed and unsupported by the evidence.

¶ 65    There was no witness testimony as to whether the school or the other rides were visible from the St. Louis Avenue parking lot or whether they were obstructed by the parish hall across the street. Nor was there evidence that defendant, specifically, was aware of the other areas of the fest or could see the school from the parking lot. The majority's finding that "it can be inferred that [defendant] would have been able to see that the rides continued across the street and behind the gymnasium and school" (*supra* ¶ 39) is pure speculation and conjecture. Therefore, no inference can be drawn from this evidence. See *People v. Jones*, 174 Ill. 2d 427, 429-30 (1996) (a sufficiency of evidence finding must be based on evidence of record and not on guess, speculation, or conjecture).

¶ 66    The majority also seems to imply that the fact there were children's rides in the parking lot indicated that it was real property comprising a school. This implication

is false. The fest was advertised as an event for adults as well as children. The flyer listed food, beer, and live music, and the fest was scheduled to end at midnight. It was not an event exclusively for children. Moreover, the statute does not bar a registered sex offender from attending carnivals or festivals where children and children's rides are present. Accordingly, nothing about the mere fact that the lot contained children's rides would have put defendant on notice that he was on real property comprising a school.

¶ 67      The remaining evidence cited by the majority in support of the knowledge element is defendant's actions in agreeing to leave the fest at the request of Officer McGreal and telling his neighbor that he understood her concerns. Not only is this evidence not probative of defendant's knowledge, but it supports his defense that he was not aware the parking lot was school property. There was no testimony that Officer McGreal discussed with defendant the fact that he was on school property. Rather, McGreal told defendant that people were "uncomfortable" that he was at the fest and that he should not be there. The only reasonable inferences that can be drawn from defendant's conduct are that he agreed he should not be present at a place where he was making people uncomfortable and that he complied with the officer's request to leave. Likewise, the only reasonable inference from his statement to Cassidy when she knocked on his door and told him she had filed a police report is that he understood she was concerned about his presence at the fest. No consciousness of guilt can be inferred from these actions or statements.

¶ 68      Defendant simply accompanied his family to a parish fest at his brother's invitation. Defendant was standing out in the open with his family members, in plain view of the public, people in the local community, and at least one police officer. He displayed no evasiveness and did not attempt to hide or conceal his identity. Upon being confronted by Officer McGreal, defendant gave his name and showed his identification. He did not flee, nor did he object to the officer running his name through the system. He then promptly left the fest as requested. Furthermore, the parties stipulated at trial that defendant was compliant with all the requirements of the sex offender registration laws for eight years prior to these events. None of this evidence would reasonably justify the inference of knowledge of the circumstances comprising the offense. On the contrary, defendant's conduct shows a lack of knowledge. See, *e.g.*, *Does 1-5*, 148 F. Supp. 3d at 487-88 (holding, under North Carolina state law, that a registered sex offender who unknowingly

enters a restricted zone is not in violation of a statute that prohibits "knowingly" being present in that zone, so long as he leaves the area immediately upon learning that he is in fact in a restricted zone). Thus, this evidence completely contradicts the majority's conclusion that defendant "knowingly" violated the statute.

¶ 69    The majority's reliance on defendant's conduct as evidence of his knowledge also places defendant in a no-win situation. Typically, where a defendant is cooperative and compliant with police instructions, it suggests an absence of consciousness of guilt. See, *e.g.*, *Ortiz*, 196 Ill. 2d at 260 (evidence supporting defendant's lack of culpability included the fact that he allowed police to search his vehicle after being told he was free to leave); *People v. Chatha*, 2015 IL App (4th) 130652, ¶ 55 (evidence of defendant's demeanor and willingness to comply with sheriff's requests during investigation buttressed the conclusion that he did not know the products he sold contained a controlled substance). By contrast, where a defendant is evasive, visibly nervous, conceals his activities, or flees the scene, a consciousness of guilt can be inferred by the trier of fact. See, *e.g.*, *McFadden*, 576 U.S. at 192 n.1; *Ortiz*, 196 Ill. 2d at 266; *Lewis*, 165 Ill. 2d at 349-50; *People v. Monteleone*, 2018 IL App (2d) 170150, ¶ 34; 29 Am. Jur. 2d *Evidence* § 527 (May 2022 Update); *Hoerauf v. State*, 941 A.2d 1162, 1180 (Md. Ct. Spec. App. 2008).

¶ 70    The majority's holding traps a defendant into a Catch-22, whereby a defendant can be charged with knowledge based on his cooperation with a law enforcement officer but, presumably, can also be charged with knowledge based on his evasion or flight from a law enforcement officer. Under the majority's holding, a defendant has a guilty mind if he complies with police and a guilty mind if he refuses to comply. The majority does not support this proposition with caselaw, nor am I aware of any caselaw that infers guilt from a defendant's cooperation with police. The implications of the majority's holding are deeply troubling.

¶ 71    Where a conviction is based on evidence that is so improbable, unconvincing, or contrary to human experience as to justify a reasonable doubt of defendant's guilt, it is this court's duty to reverse the judgment of conviction. *Ortiz*, 196 Ill. 2d at 259, 267. The State failed to meet its burden of proving that defendant either knew or was aware of the substantial probability that he was present on property comprising a school. Since the State failed to introduce any credible evidence that defendant knowingly violated section 11-9.3(a) of the Criminal Code of 2012,

defendant's conviction should be reversed. For the foregoing reasons, I respectfully dissent.

¶ 72        JUSTICE NEVILLE joins in this dissent.