2023 IL App (1st) 192090-U

No. 1-19-2090

Order filed July 21, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 3945 |
| | ) | |
| ARIEL WILSON, | ) | Honorable |
| | ) | Carl Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MITCHELL delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for leaving the scene of a motor vehicle accident involving injury to a person and failing to report, where the evidence was sufficient to show that defendant had knowledge that the accident involved another person.

¶ 2    Following a bench trial, defendant Ariel Wilson was found guilty of leaving the scene of a

motor vehicle accident resulting in personal injury and failing to report (625 ILCS 5/11-401(b)

(West 2012)) and sentenced to two years' probation. On appeal, she argues the evidence was

insufficient to sustain her conviction because the State failed to prove beyond a reasonable doubt that she had knowledge that the accident involved another person. We affirm.

¶ 3    Defendant was charged by indictment with one count of leaving the scene of a motor vehicle accident involving injury to a person and failing to report (625 ILCS 5/11-401(b) (West 2012)).

¶ 4    At trial, Cassandra Griffith testified that she was the daughter of Michael Griffith. Cassandra Griffith saw Michael Griffith on December 25, 2013, and he could walk and speak. On December 28, 2013, police advised Cassandra Griffith that Michael Griffith was the victim of a hit-and-run accident that had occurred earlier that day in Chicago Heights. She went to St. James Hospital, where Michael Griffith lay unconscious with injuries to his leg and the back of his head. Photographs taken at the hospital, which Cassandra Griffith identified in court and are included in the record on appeal, showed blood on his face and his leg "wrapped in a band." He was transported to Stroger Hospital for treatment of head trauma and, after three weeks, was transferred to a rehabilitation hospital, where he spent about three months. He regained consciousness and opened his eyes, but he did not speak. He was later transferred to a nursing home, where he remained, bedridden and nonverbal, until his death in December 2017.

¶ 5    Elizabeth Vlahakis, a paramedic and firefighter of the South Chicago Heights Fire Department, testified that she was dispatched to West 26th Street and Euclid Avenue shortly before 6:30 p.m. on December 28, 2013. The area was "wooded" and "poorly lit." Police officers, using flashlights, alerted Vlahakis and her partner, Daniel Tornga, to a ditch where a man lay, about 10 to 15 feet from the road. The man, later identified to be Michael Griffith, "was dressed for inclement weather" in "a lot of layered clothing, multiple layers of pants," and a down jacket. He

was semiconscious, "grunting and groaning," with a laceration on his left eye. After cutting through his clothing, Vlahakis saw what appeared to be an open compound leg fracture involving the tibia and the fibula. Vlahakis and Tornga splinted Michael Griffith's leg and transported him to St. James Hospital. On cross-examination, Vlahakis testified that the only light at the scene came from the ambulance and police vehicles.

¶ 6    Officer Kevin Walsh of the Cook County Sheriff's Police Department testified that he and another officer were dispatched to the scene of the accident, a two-lane highway in a "very dark, wooded area." Walsh secured the scene and contacted investigators and evidence technicians.

¶ 7    Martin Juppe, a forensic investigator with the Cook County Sheriff's Police Department, testified that he and his partner photographed items at the scene, including a black glove, a black bag, a black shoe, and a black jacket that were believed to be Michael Griffith's, and a vehicle side mirror. Juppe did not see blood or recover any blood evidence at the scene.

¶ 8    Detective David Tuzim of the Cook County Sheriff's Police Department testified that he arrived at the scene around 6:30 p.m. A vehicle mirror was located a few feet north of the road in the "grassy shoulder area," and clothing was found west of the suspected site of the impact. After researching the mirror, Tuzim learned that it was consistent with a 2002 Ford Taurus. The police canvassed the area for vehicles missing a mirror, and Tuzim issued an all-points bulletin.

¶ 9    On January 28, 2014, at about 9 p.m., Tuzim was driving in Chicago Heights and observed, in a strip mall parking lot, a 2002 Ford Taurus that matched the color of the mirror. The Taurus was missing its passenger side mirror and had "extensive damage" to the rear. Additionally, "the metal frame around the windshield had a big dent," and the front passenger side fender and door

were dented. Tuzim called his partner and, when he arrived, "ran the license plate" of the vehicle and identified defendant as its owner.

¶ 10     Tuzim approached the Taurus and observed a person in the driver's seat, whom Tuzim identified in court as defendant. A second occupant was in the front passenger seat. When Tuzim asked defendant about the damage to her vehicle, she said that the damage to the rear occurred when she hit a tree and that she made a police report about that incident. As to the front damage, including the missing mirror, defendant said that, about a month before, she was driving on 26th between Euclid and Western Avenue when a rock "jumped off the roadway" and "struck her vehicle[,] breaking her windshield and knocking her mirror off." Following the execution of a search warrant, the front passenger side door of the Taurus was removed and sent for analysis with the mirror found at the accident scene.

¶ 11     The State entered documents bearing defendant's name that were recovered from the Taurus, including an insurance card and a bill from Rainbow Auto Glass for windshield repair dated December 30, 2013. The State published photographs, included in the record on appeal, in which Tuzim identified the vehicle as it appeared on January 28, 2014, with a large dent in the pillar around the windshield, "a dent on the front fender or quarter panel" on the passenger side, numerous dents in the front passenger side door, and a missing passenger side mirror, along with extensive damage to the trunk. In court, Tuzim also identified the mirror recovered from the accident scene.

¶ 12     On cross-examination, Tuzim testified that he interviewed a witness at the accident scene on December 28, 2013, but did not learn the race or the gender of the driver of the vehicle that struck Michael Griffith or whether the mirror was involved in the accident.

¶ 13    Victor Tolbert testified that he met defendant in October 2013 and that, as of December 2013, they were in an "on and off" dating relationship. He identified defendant in court and testified that, shortly after 6 p.m. on December 28, 2013, he called her to "see what she was up to." According to Tolbert,

> "She was telling me about—we was on the verge—we was like in a relationship on and off, and I guess she was trying to like I guess talk back to me, and at the time she was telling me that she was pregnant at the time. *** But then she had said something—she had hurried up and got off the phone with me and said that she think she had done ran something over or hit something, an object. *** She said she think she ran something over."

¶ 14    Defendant told Tolbert she would call him back. Asked whether she called him back, Tolbert testified, "Yeah, it was back and forth like." He told her to meet him at his grandmother's house in Harvey. He identified his cell phone number as of the time of the incident.

¶ 15    About 20 minutes elapsed between the time Tolbert spoke with defendant and when she arrived at his grandmother's house at 6:30 or 7 p.m. He directed her to park by an outdoor light. Tolbert knew that the Taurus had been damaged when defendant had backed into a tree. Aside from the damage from that incident, he observed that the Taurus had a cracked windshield and was missing the passenger side mirror. He did not observe blood or anything else on the vehicle that suggested it had struck a person. Asked whether defendant told him how the mirror was lost or the windshield cracked, Tolbert testified that she said, "she think she had hit a rock or brick or something and it messed the car up." Defendant also told him her uncle would help her get the windshield fixed.

¶ 16    On cross-examination, Tolbert testified that defendant never told him she had hit a person. Tolbert learned of the alleged hit-and-run accident when a detective called him in January 2014.

¶ 17    On redirect, Tolbert testified that defendant never told him where the incident occurred. Asked how defendant sounded when "she told [him] that she had hit something," Tolbert responded, "She sounded kind of like nervous and she was rushing to get off the phone." She said she would call him back. His understanding was that the new damage to her vehicle that he observed on December 28, 2013, had occurred that day.

¶ 18    The State entered a stipulation that, if called, an expert in forensic science of fracture matching from Northeastern Illinois Regional Crime Laboratory would testify that the broken passenger side mirror and the door of defendant's Taurus had "at one time formed a single object and that this constitutes a physical fit/fracture match."

¶ 19    The State entered into evidence a record from the Illinois Secretary of State showing that the Taurus was registered to defendant, a business record from Rainbow Auto Glass corresponding to the windshield repair bill found in the Taurus, and a Sprint call records log of defendant's cell phone activity on December 28, 2013. The Sprint log, included in the record on appeal, shows outbound calls from defendant's cell number to the number Tolbert identified as his cell phone at 5:58 p.m. (198 seconds' duration), 6:07 p.m. (54 seconds), 6:20 p.m. (59 seconds), and 6:22 p.m. (75 seconds), as well as inbound calls from Tolbert's cell number at 6:02 p.m. (26 seconds), 6:03 p.m. (58 seconds), 6:08 p.m. (68 seconds), 6:15 p.m. (58 seconds), and 6:35 p.m. (18 seconds). The Sprint log also shows two outbound calls to a number other than Tolbert's cell phone at 6:17 p.m. (27 seconds and 60 seconds), and inbound calls from that number at 6:01 p.m. (87 seconds) and 6:17 p.m. (178 seconds).

¶ 20   In closing arguments, defense counsel acknowledged that defendant was "blowing up [Tolbert's] phone," but argued that if defendant sounded "nervous," as Tolbert testified, her nervousness was attributable to the fact that she told him she was pregnant.

¶ 21   The trial court found defendant guilty of failure to report leaving the scene of a motor vehicle accident resulting in personal injury. Defendant filed a motion to reconsider, which the court denied. The court sentenced defendant to two years' probation, with 177 days' credit for the period she had been on house arrest. She did not file a motion to reconsider the sentence.

¶ 22   On appeal, defendant argues the evidence was insufficient to prove she had knowledge that the accident involved another person, an element for the offense of failing to make a report in violation of section 11-401(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-401(b) (West 2012)).

¶ 23   In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found each of the essential elements of the crime proved beyond a reasonable doubt. *People v. Aljohani*, 2022 IL 127037, ¶ 66. In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, drawing reasonable inferences from the evidence, and resolving conflicts in the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown*, 2013 IL 114196, ¶ 48. "We will reverse a criminal conviction only when the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's

guilt." *People v. Jones*, 2023 IL 127810, ¶ 36. This standard of review applies whether the evidence is direct or circumstantial. *Brown*, 2013 IL 114196, ¶ 49.

¶ 24    Here, defendant was convicted of leaving the scene of a motor vehicle accident involving personal injury and failing to report, in violation of section 11-401(b) of the Code (625 ILCS 5/11-401(b) (West 2012)).[1] Section 11-401(b) requires a driver of a vehicle involved in an accident resulting in a person's injury or death who has failed to stop or to comply with section 11-401(a) to report to a nearby police station or sheriff's office certain information on the accident no later than 30 minutes after the accident or, if such driver is hospitalized and unable to promptly report, no later than 30 minutes after hospital discharge. 625 ILCS 5/11-401(b) (West 2012). Section 11-401(a) requires the driver of a vehicle involved in an accident resulting in personal injury or death to "immediately stop" at or as close as possible to the scene, and to remain there until the requirements of section 11-403 are fulfilled. 625 ILCS 5/11-401(a) (West 2012).

¶ 25    In turn, section 11-403 requires a driver involved in an accident resulting in an injury or death, or damage to a vehicle driven or attended by another person, (1) to give certain information to the person struck, or the driver, occupant, or person attending the vehicle struck, or, if no such person has capacity, to report to the nearest office of a duly authorized police authority; (2) to display his or her driver's license on request; and (3) to render "reasonable assistance," as defined in the statute, to any injured person. 625 ILCS 5/11-403 (West 2012); *People v. Digirolamo*, 179 Ill. 2d 24, 38 (1997).

---

[1] This violation is a Class 2 felony (625 ILCS 5/11-401(d) (West 2012)). A violation of section 11-401(b) is a Class 1 felony if the accident at issue results in the death of a person. 625 ILCS 5/11-401(d) (West 2012).

¶ 26 Thus, defendant's conviction under section 11-401(b) required the State to prove beyond a reasonable doubt the following elements: (1) defendant was driving and was involved in a motor vehicle accident that resulted in the personal injury or death of a person; (2) defendant failed to stop pursuant to section 11-401(a) or to comply with the requirements of section 11-403; and (3) she failed to report the accident within the requisite time. *Digirolamo*, 179 Ill. 2d at 38. The State was also required to prove that defendant "ha[d] knowledge" that she "was involved in an accident that involved another person." *Id.* at 42.

¶ 27 In this court, defendant does not dispute that her vehicle was involved in the accident, that Michael Griffith was injured as a result, or that she failed to report as the provisions above require. Rather, she argues solely that the evidence was insufficient to prove beyond a reasonable doubt that she had knowledge that the accident involved another person.

¶ 28 The knowledge element for a section 11-401(b) offense can be established through circumstantial evidence; "[f]or instance, knowledge that another person was involved in the accident may be imputed to a driver from the circumstances of the accident." *Id.* Further, a defendant's "knowledge" of a material fact need not be established to the level of his or her absolute certainty. See 720 ILCS 5/4-5(a) (West 2012). Rather, "[k]nowledge of a material fact includes awareness of the substantial probability that the fact exists." *Id.*; see also *People v. Moreno*, 2015 IL App (2d) 130581, ¶ 19 (based on the circumstances of the accident, "it was reasonable for the trial court to disbelieve defendant's self-serving statement that he was not aware that he had been involved in a motor-vehicle accident").

¶ 29    After reviewing the evidence in the light most favorable to the State, we find that a reasonable trier of fact could conclude that defendant had knowledge or knew the substantial probability that the accident involved another person.

¶ 30    First, the record shows that Michael Griffith's injuries were serious, supporting an inference that defendant, driving the vehicle as it struck Michael Griffith, would have felt the impact and seen him when he collided with her vehicle. Vlahakis, a responder, testified that Michael Griffith was unresponsive at the scene and that he had an apparent open compound leg fracture. Michael Griffith's daughter, Cassandra Griffith, testified that he had visible injuries to his head and leg. He was transferred to another hospital for treatment of head trauma, spent three months at a rehabilitation facility, and then spent the rest of his life in a nursing home, where he remained nonverbal and bedridden.

¶ 31    Second, the extent and location of the damage to defendant's vehicle also supports a reasonable inference of knowledge. Tolbert testified that, soon after the accident, he observed that the front windshield was newly cracked and the passenger side mirror newly missing, which suggests that Michael Griffith's body struck the front of the vehicle. See *Digirolamo*, 179 Ill. 2d at 47 ("The evidence showed that there was damage to the windshield of defendant's vehicle, suggesting that [the victim's] body hit the windshield."). Examining the Taurus one month after the accident, Tuzim saw a large dent in the windshield pillar, as well as dents on the front fender or quarter panel and front passenger door, and testified that defendant attributed this damage to an object having struck her vehicle on the date when, and at the scene where, Michael Griffith was struck and injured. Such damage, considered with Michael Griffith's injuries, suggests an impact so forceful that defendant likely not only would have seen him, but would have felt and heard the

impact and thus been aware of a substantial likelihood that her vehicle had struck a person. Based on this circumstantial evidence, we cannot say that no reasonable trier of fact could find that defendant knew that the accident involved another person. See *People v. White*, 2016 IL App (2d) 140479, ¶ 37 ("Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer other connected facts that human experience dictates usually and reasonably follow.").

¶ 32    Third, the evidence of defendant's conduct at the time of the accident also supports an inference of knowledge. Tolbert testified he was speaking by phone with defendant when she said that she had hit or run over something, hurriedly ended the call, and said she would call him back. Tolbert testified that she sounded nervous and rushed. Although Tolbert described only two calls between them, he testified it was "back and forth like," and defense counsel acknowledged that defendant was "blowing up" Tolbert's phone. The Sprint log reflects that, around the time of the accident, defendant placed four calls to Tolbert's cell line, that he placed five to hers, and that she placed additional calls around the same time. In its totality, defendant's call activity supports a reasonable inference that she fled upon realizing that she had struck a pedestrian and was potentially culpable.

¶ 33    Defendant's ensuing conduct also supports a reasonable inference of knowledge. Tolbert testified that, after she told him she had to get off the phone because her vehicle had "hit" or "r[u]n something over," she called him back and drove to Harvey so that he could inspect the damage to her vehicle. Tolbert's testimony and the auto repair documents indicate that she then obtained her uncle's assistance to get the windshield repaired within two days. The prompt repair of the windshield, considered with the other circumstantial evidence, supports a reasonable inference that

she knew the accident involved another person. See *Digirolamo*, 179 Ill. 2d at 31, 47-48 (noting that the defendant's actions after the accident "could *** support a finding that defendant knew he had hit a person" where, *inter alia*, the defendant admitted he sought to conceal the accident from his father by removing and replacing the damaged windshield). Based on the totality of this evidence, and reasonable inferences therefrom, a trier of fact could conclude that defendant knew the accident involved a person and, thus, failed to report a motor vehicle accident involving personal injury after leaving the scene.

¶ 34    Nevertheless, defendant argues that the State failed to present evidence of her knowledge that another person was involved in the accident, and that the State relied on speculation rather than proof of this element. We disagree.

¶ 35    Circumstantial evidence alone may establish knowledge for purposes of section 11-401(b). *Digirolamo*, 179 Ill. 2d at 42-43. Indeed, knowledge, by its nature, is rarely susceptible to direct proof. *People v. Leib*, 2022 IL 126645, ¶ 37. Furthermore, if the evidence as a whole satisfies the trier of fact of a defendant's guilt beyond a reasonable doubt, it " 'need not *** be satisfied beyond a reasonable doubt as to each link in the chain of circumstances.' " *People v. Jackson*, 232 Ill. 2d 246, 281 (2009) (quoting *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). " 'It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt.' " *Jackson*, 232 Ill. 2d at 281 (quoting *Hall*, 194 Ill. 2d at 330).

¶ 36    Defendant notes that she did not repair the mirror, and that the windshield repair may have been the minimum work required to make her vehicle safe to operate. However, the trial court was not required to "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Hall*, 194 Ill. 2d at 322.

¶ 37 We also reject defendant's contention that the inference of knowledge is unreasonable because she "consistently stated that a rock hit her car." Tuzim testified that defendant said that a rock "jumped off the roadway" and "struck her vehicle[,] breaking her windshield and knocking her mirror off." However, Tolbert testified that, at the time of the accident, defendant said she "had done ran something over or hit something"—two alternative explanations of the accident that differ from each other and from her explanation to Tuzim.

¶ 38 In any event, the trial court was "not required to accept defendant's version of the events over competing versions." *People v. Bobo*, 2020 IL App (1st) 182628, ¶ 46 (citing *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001)); see also *Moreno*, 2015 IL App (2d) 130581, ¶¶ 19, 28 (affirming conviction under section 11-401(b) where it was reasonable for the trial court to find the State proved defendant's knowledge of the accident and to reject his claim that he believed he had hit a rock or a curb). Here, considering the evidence in its totality, the court was not unreasonable in concluding that defendant had knowledge that the accident involved another person. See *People v. Williams*, 2022 IL App (2d) 200368-U, ¶ 57 ("Given the extent of the damage to the [defendant's vehicle] and the nature of the victim's injuries, the trial court was not required to accept the implausible explanation that defendant thought he hit a construction sign or other object.").[2]

¶ 39 Additionally, we reject defendant's attempts to distinguish *Moreno* and *Digirolamo* based on their facts. Although both opinions recounted evidence from which a trier of fact could make a reasonable inference that a defendant had knowledge that he was involved in an accident involving another person, as required for a conviction under section 401(b), neither set a minimum threshold

---

[2] See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered under Rule 23(b) on or after January 1, 2021, "may be cited for persuasive purposes").

of proof. Thus, the fact that, in *Moreno*, the accident occurred in broad daylight and in the middle of a busy intersection in no manner suggests that the timing or location of an accident is decisive of the knowledge element. *Moreno*, 2015 IL App (2d) 130581, ¶ 19; see also *Digirolamo*, 179 Ill. 2d at 28-33, 47-48 (affirming conviction even though the evidence showed the accident occurred in the dark, early morning hours); *Williams*, 2022 IL App (2d) 200368-U, ¶ 58 (affirming conviction even though the accident occurred on a dark, rural road late at night). Likewise, while the defendant in *Digirolamo* admitted to having possibly struck a person and the State elicited testimony from an accident reconstruction specialist, the absence of similar evidence in this case does not preclude a finding of knowledge. See *Digirolamo*, 179 Ill. 2d at 29-31, 47.[3] "An admission by a defendant is not required for the trier of fact to conclude that a defendant had knowledge of something" (*Leib*, 2022 IL 126645, ¶ 37), and defendant cites no authority to suggest that testimony on the mechanics of the accident is necessary to support the conviction. Moreover, here, defendant stipulated to expert fracture-match testimony that the mirror found at the scene of the accident was from her Taurus.

¶ 40    In sum, considering the evidence in the light most favorable to the prosecution, we cannot say that no reasonable finder of fact could find that defendant had an awareness of a substantial probability that the accident involved a person. 720 ILCS 5/4-5(a) (West 2012); *Moreno*, 2015 IL App (2d) 130581, ¶ 19. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that defendant had knowledge, or knew there was a substantial probability, that the accident involved another person, as is required to sustain her conviction. *Digirolamo*, 179 Ill. 2d at 42.

---

[3] In *Digirolamo*, the supreme court ordered a new trial due to a jury instruction error, but, for double jeopardy purposes, found the evidence of defendant's knowledge that the accident involved another person sufficient to support the conviction. *Digirolamo*, 179 Ill. 2d at 48.

¶ 41   For the reasons set forth above, we affirm the judgment of the circuit court of Cook County.

¶ 42   Affirmed.